**EXHIBIT 2**



**U.S. COMMODITY FUTURES TRADING COMMISSION**

Three Lafayette Center
Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5987
www.cftc.gov

Division
Of
Enforcement

February 16, 2012

**VIA CERTIFIED MAIL AND E-MAIL**
Michael S. Potts
P.O. Box 8403
Lancaster, PA 17604

   RE: *CFTC v. Watson, et al., No. 11-cv-10949 (E.D. Mi.)*

Dear Mr. Potts:

Please see the enclosed Commodity Futures Trading Commission's First Request for Admission of Facts to Defendant Michael S. Potts. **Please respond on or before March 20, 2012.** *See* Fed. R. Civ. Pro 36(a)(3) (matter deemed admitted absent response within 30 days of service); Fed. R. Civ. Pro. 5(b)(2)(C) (service complete upon mailing); Fed. R. Civ. Pro. 6(d) party provided 3 additional days to act when service effected by mail pursuant to Rule 5(b)(2)(C)).

In prior correspondence, you have indicated an intention to assert your Fifth Amendment right against self-incrimination in response to Commission requests. Please note that each and every Request for Admission of Fact must be answered separately. Thus, if you intend to assert your Fifth Amendment right against self-incrimination in response to any of these requests, you must do so with respect to each and every request you believe the assertion applicable so that we can be clear regarding the scope of your assertions. Failure to respond to any request or portion thereof will be deemed an admission. *See* Fed. R. Civ. Pro. (a)(3) – (5).

Sincerely,

*/s/ Allison Baker Shealy*
Allison Baker Shealy

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> ALAN JAMES WATSON, MICHAEL POTTS and CASH FLOW FINANCIAL LLC, <br><br> Defendants, <br><br> and <br><br> THE JEDBURGH GROUP, <br><br> Relief Defendant | 11-cv-10949-LPZ-MKM |

## COMMODITY FUTURES TRADING COMMISSION'S FIRST REQUEST FOR ADMISSION OF FACTS TO DEFENDANT MICHAEL S. POTTS

Plaintiff Commodity Futures Trading Commission, by its counsel and pursuant to Federal Rule of Civil Procedure 36, requests that Defendant Michael S. Potts ("Potts"), within thirty days, admit to the truth of the following facts. Such facts shall be deemed admitted unless a sworn statement is delivered to the undersigned attorney within thirty (30) days after the date of service of this Request for Admission of Facts ("Request"), said sworn statement either confirming the following facts as to the truth or denying specifically the matters of which an admission is requested or setting forth in detail the reasons why Defendant cannot truthfully either admit or deny these matters.

A.  **INSTRUCTIONS**

1. Except as otherwise provided, each paragraph and numbered subparagraph constitutes a separate statement of fact and is to be admitted or denied separately. Each response shall specifically admit or deny the Request, or set forth in detail the reason why you cannot truthfully admit or deny the Request. A denial shall fairly meet the substance of the Request. When good faith requires that you qualify an answer and deny only part of the Request, you shall admit so much of the Request as is true and qualify or deny the remainder.

2. You may not give a lack of information or knowledge as a reason for failure to admit or deny, unless you state that you have made a reasonable inquiry and that the information known or reasonably available to you is insufficient to enable you to admit or deny. If an objection to any Request is made, the reasons therefore must be stated. If you object to any request under a claim of privilege, the nature of the privilege claimed shall be stated as well as the basis for such claim.

B.  **DEFINITIONS**

1. The terms "you," "your" and "Potts" means Michael S. Potts, and includes any of Potts' consultants, agents, representatives, attorneys, and accountants, as well as any person answering these Requests on Potts' behalf, and any present or previous attorney, servant, principal, officer, representative or other person acting or purporting to act for or on Potts' behalf.

2. The term "Watson" means Alan James Watson, also known as A.J. Watson, and includes any of Watson's consultants, agents, representatives, attorneys, and accountants, and any present or previous attorney, servant, principal, officer, representative

2

or other person acting or purporting to act for or on Watson's behalf.

3. The term "CFF" means the entity doing business under the name Cash Flow Financial LLC, and any and all affiliates, subsidiaries, divisions, related corporations, partnerships, proprietorships, associations, or organizations, and all of their directors, principals, officers, partners, members, consultants, agents, employees, representatives, beneficiaries, attorneys, and accountants.

4. The term "Trade LLC" means the entity doing business under the name Trade LLC, and any and all affiliates, subsidiaries, divisions, related corporations, partnerships, proprietorships, associations, or organizations, and all of their directors, principals, officers, partners, members, consultants, agents, employees, representatives, beneficiaries, attorneys, and accountants.

5. The term "pool participant" means any and all persons who were solicited and/or deposited funds with CFF.

6. The term "person" means any natural person, group, corporation, association, firm, partnership, company, joint venture, sole proprietorship or other business or legal entity and officers, agents, attorneys, servants, or representatives of such entity, as the context requires.

7. The term "relevant period," unless otherwise specified (as, for example, by use of the word "ever" or the phrase "at any time" or "of any date"), and without regard to the tenses used in any request, covers the period from November 27, 2007 to the present.

C.   REQUESTS FOR ADMISSION OF FACTS

1.   Admit that on or about January 28, 2004, Watson formed CFF as a Michigan limited liability company.

**RESPONSE:**

2.   Admit that by at least November 27, 2007, you began soliciting pool participants to participate in an "investment club" operated through CFF for the purpose of forming a commodity pool to be traded by a Florida-based entity called Trade LLC.

**RESPONSE:**

3.   Admit that you assisted Watson with the day to day operations of CFF.

**RESPONSE:**

4.   Admit that during the relevant period, CFF had more than 600 pool participants throughout the United States.

**RESPONSE:**

5.   Admit that during the relevant period, CFF received at least $45 million in funds for trading and investment.

**RESPONSE:**

6. Admit that you directly and indirectly solicited pool participants to deposit funds with CFF for trading commodity futures.

**RESPONSE:**

7. Admit that you solicited pool participants through instrumentalities of interstate commerce, including telephone lines and the internet.

**RESPONSE:**

8. Admit that you directly solicited pool participants through monthly conference calls and/or webinars occurring on the first Wednesday of each month beginning at least by May 2008.

**RESPONSE:**

9. Admit that you directly solicited pool participants at an event held in Perrysburg, Ohio on or about September 5-6, 2008.

**RESPONSE:**

10. Admit that you directly solicited pool participants at an open house hosted at Trade LLC's headquarters in Palm Beach Gardens, Florida, on March 28, 2009.

**RESPONSE:**

11. Admit that you videotaped Trade LLC personnel purportedly trading in late March 2009 and arranged for the footage to be disseminated to CFF pool participants and potential pool participants in order to induce additional deposits when CFF had stopped sending any funds to Trade LLC for trading.

**RESPONSE:**

12. Admit that you indirectly solicited pool participants through a series of "Executive Club Members" or "ECMs."

**RESPONSE:**

13. Admit that the ECMs acted under Watson's and your direction in identifying and soliciting new participants.

**RESPONSE:**

14. Admit that you represented to ECMs that they would be compensated based on a proportion of the profits earned by any deposits they generated were compensated in a manner similar to a multi-level marketing program.

**RESPONSE:**

15. Admit that you arranged for payments to ECMs based on the purported profitability of investments they solicited, even though no actual profits were generated.

**RESPONSE:**

16. Admit that you received funds from CFF pool participants through the mail and other instrumentalities of interstate commerce.

**RESPONSE:**

17. Admit that CFF received funds from pool participants through the mail and other instrumentalities of interstate commerce.

**RESPONSE:**

18. Admit that during your solicitations, you provided and pool participants were required to sign the CFF Operating Agreement.

**RESPONSE:**

19. Admit that the CFF Operating Agreement sets forth the agreement between CFF and all CFF pool participants.

**RESPONSE:**

20. Admit that the CFF Operating Agreement states, in pertinent part, that Watson as CEO is granted:

"the power and authority to open and manage one or more brokerage or investment accounts on behalf of CFF-LLC. Notwithstanding this power and authority, such brokerage or investment accounts will be managed in accordance with an investment strategy proposed by the CEO, and approved by two-thirds majority of the Members ("Investment Strategy")."

**RESPONSE:**

21. Admit that the "Investment Strategy" as agreed to by the pool participants and posted on the CFF website was to pool their funds to trade futures and equities on an intraday basis with the aid of a system developed by Trade LLC.

**RESPONSE:**

22. Admit that in all of the materials, e-mails, meetings, and webinars that you used to solicit pool participants, you represented that all CFF pooled funds would be traded using the Trade LLC programs.

**RESPONSE:**

23. Admit that you never received any documentation reflecting actual trading of CFF pool participant funds by Trade LLC.

**RESPONSE:**

24. Admit that although you had represented that all pool participant funds would be traded using Trade LLC's program, Watson provided only a portion of the pooled funds to Trade LLC for the purpose of trading futures and/or securities.

**RESPONSE:**

25. Admit that of the $45 million solicited and deposited with CFF, only $8.1 million was traded by Trade LLC as advertised.

**RESPONSE:**

26. Admit that Watson deposited a portion of the pool's funds in his own personal accounts opened under his own name at Alaron Trading Corporation, Account No. 5250xxxx (the "Alaron Account") and at TradeStation Securities, Account No. 2107xxxx (the "TradeStation Account").

**RESPONSE:**

27. Admit that Watson traded commodity futures, specifically E-mini S&P 500 futures, with CFF pool participant funds in his personal Alaron Account and TradeStation Account.

**RESPONSE:**

28. Admit that no futures accounts were ever funded or traded in CFF's name.

**RESPONSE:**

29. Admit that Watson began investing CFF pool participant funds in a variety of unauthorized schemes other than Trade LLC as early as March 2008.

**RESPONSE:**

30. Admit that you failed to disclose that Watson began investing CFF pool participant funds in a variety of unauthorized schemes other than Trade LLC as early as March 2008.

**RESPONSE:**

31. Admit that none of the funds deposited into the CFF pool on or after March 12, 2009 were traded by Trade LLC and instead were used in unauthorized schemes or otherwise misappropriated.

**RESPONSE:**

32. Admit that you failed to disclose that none of the funds deposited into the CFF pool on or after March 12, 2009 were traded by Trade LLC and instead were used in unauthorized schemes or otherwise misappropriated.

**RESPONSE:**

11

33. Admit that during the March 28, 2009 open house hosted at Trade LLC's headquarters in Florida, you failed to disclose to prospective and current pool participants that Watson had stopped sending funds to Trade LLC two weeks earlier.

**RESPONSE:**

34. Admit that during the March 28, 2009 open house hosted at Trade LLC's headquarters in Florida, you failed to disclose to prospective and current pool participants that Watson had previously filed a lawsuit on behalf of CFF in an attempt to recover funds invested in an unauthorized scheme wholly unrelated to Trade LLC.

**RESPONSE:**

35. Admit that the CFF pool was losing money, both through Watson's unapproved investments and through Trade LLC.

**RESPONSE:**

36. Admit that you failed to disclose that the CFF pool was losing money, both through Watson's unapproved investments and through Trade LLC.

**RESPONSE:**

41. Admit that Watson was using subsequent pool participants' funds to pay principal and purported profit returns to existing pool participants.

**RESPONSE:**

42. Admit that you failed to disclose the fact that Watson was using subsequent pool participants' funds to pay principal and purported profit returns to existing pool participants.

**RESPONSE:**

43. Admit that Watson paid his own personal expenses directly from the CFF bank account.

**RESPONSE:**

44. Admit that you failed to disclose that Watson paid his own personal expenses directly from the CFF bank account.

**RESPONSE:**

45. Admit that Watson misappropriated $325,000 of CFF pool participant funds when he returned funds that had been invested and lost in a prior Ponzi scheme involving Safevest as "return of principal" invested in Safevest.

**RESPONSE:**

46. Admit that you failed to disclose that Watson misappropriated $325,000 of pool participant funds when he returned funds that had been invested and lost in a prior Ponzi scheme involving Safevest as "return of principal" invested in Safevest.

**RESPONSE:**

47. Admit that you failed to disclose that Watson misappropriated pool participant funds by investing $1 million in connection with Blue Diamond Excavation, Olathe Mining Company and Sundial Investment Group LLC (*Watson and Cash Flow Financial LLC v. Blue Diamond Excavation, Inc.*, No. 8:10-cv-00459 (C.D. Cal.)).

**RESPONSE:**

48. Admit that you failed to disclose that Watson misappropriated pool participant funds by investing $650,000 in an Arizona based money leasing scheme operated by Charles Bruce Ferguson (*Arizona v. Ferguson*, No. 64 SGJ (Ariz. Sup. Ct., Maricopa County)).

RESPONSE:

49. Admit that you failed to disclose that Watson misappropriated pool participant funds by investing $1 million in a California based money leasing scheme involving Soldado Corporation (*Watson and Cash Flow Financial LLC v. Soldado Corp.*, No. 10-CV-1394 (N.D. Cal.)).

RESPONSE:

50. Admit that you failed to disclose that Watson misappropriated pool participant funds by investing $4,850,000 in a money leasing scheme with Darlene Bishop and Paradize Funding Network in Texas (*Cash Flow Financial LLC v. Bishop*, No. 09-CV-00029 (W.D. Tex.)).

RESPONSE:

51. Admit that you failed to disclose that Watson misappropriated pool participant funds by investing $3 million with a group of individuals and entities

including Jason Meyer, M5 Enterprises LLC, Royal Sovereign Group, and 3 Hooligans Investment Properties in connection with a money leasing program for the purpose of ultimately investing in U.S. Treasury instruments (*Cash Flow Financial LLC v. Meyer*, No. 2:09-CV-05002 (E.D.N.Y.)).

**RESPONSE:**

52. Admit that while Watson was away on vacation in July 2009, you hosted the monthly meeting for pool participants.

**RESPONSE:**

53. Admit that when you hosted the July 2009 monthly meeting, you represented that everything was going fine and CFF's trading, which was being conducted by Trade LLC, was successful.

**RESPONSE:**

54. Admit that when you hosted the July 2009 monthly meeting for CFF pool participants, you failed to disclose that CFF had ceased sending funds to Trade LLC months earlier.

**RESPONSE:**

55. Admit that you assisted Watson in preparing and issuing 2009 Schedule K-1's to CFF pool participants.

**RESPONSE:**

56. Admit that the 2009 Schedule K-1's issued to CFF pool participants, which you assisted in the preparation of, reflected profits on investment through at least the end of May 2009.

**RESPONSE:**

57. Admit that CFF pool participants had not in fact profited in 2009.

**RESPONSE:**

58. Admit that the 2009 Schedule K-1's issued to CFF pool participants, which you assisted in the preparation of, were false because they failed to disclose the substantial losses to CFF pool participants' deposits.

**RESPONSE:**

18

Respectfully submitted on February 16, 2012,

/s/ Allison Baker Shealy
ALLISON BAKER SHEALY (VA 46634; DC 478202)
PAUL G. HAYECK (MA 54815)
JASON MAHONEY (DC 489276)
U.S. Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, N.W.
Washington, D.C. 20581
(202) 418-5000
ashealy@cftc.gov
phayeck@cftc.gov
jmahoney@cftc.gov

## Certificate of Service

   I hereby certify that on February 16, 2012, 2011, I served **Plaintiff Commodity Futures Trading Commission's First Request for Admission of Facts to Defendant Michael S. Potts** via electronic mail upon:

Alan J. Watson
Pro Se Defendant
17176 Merryweather
Clinton Township, MI 48038
Newemail4aj@gmail.com

Michael S. Potts
Pro Se Defendant
P.O. Box 8403
Lancaster, PA 17604
Mspotts1@gmail.com
ms_potts@comcast.net
(Copy also sent via certified U.S. mail, first-class postage paid)

Kay Griffith Hammond
Attorney for Receiver
Stenger & Stenger, P.C.
4095 Embassy Drive, S.E., Ste A
Grand Rapids, MI 49546
(616) 988-2230
kay@stengerlaw.com

Harry H. Wise, III
Attorney for Relief Defendant The Jedburgh Group
250 West 57th Street, Suite 1316
New York, NY 10107
(212) 810-2430 Ex. 302
hwiselaw@aol.com


            ___/s/ Allison Baker Shealy___