UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COMMODITY FUTURES
TRADING COMMISSION

      Plaintiff,                      Civil Action No.: 11-CV-10949

      vs.                              District Judge Lawrence P. Zatkoff

                                    Magistrate Judge Mona K. Majzoub

ALAN JAMES WATSON, MICHAEL
POTTS, and CASH FLOW
FINANCIAL, LLC,

      Defendants,

And

      THE JEDBURGH GROUP

      Relief Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter comes before the Court on Requests for Adjudication of Claims from three investors, Mr. Ken Martin, Mr. Christian Genitrini, on behalf of Sports Dimensions, Inc., and Ms. Elizabeth Grill, who each lost money investing in a Ponzi scheme perpetuated by Defendants through Cash Flow Financial, LLC (CFF). (*See* docket nos. 108, 109, and 112.)  Mr. Martin, Mr. Genitrini, and Ms. Grill each challenge their final Adjusted Net Investor Claims (ANIC), as determined by the Receiver in this matter, Phillip S. Stenger.  The Receiver filed Responses to each of the investor's Requests for Adjudication. (Docket nos. 119, 120, and 121.)  The matter has been referred to the undersigned for consideration. (Docket no. 123.)  The Court now issues this Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

**I.      Recommendation**

The undersigned recommends that Mr. Martin's Request for Adjudication [108] be DENIED, Mr. Genitrini's Request for Adjudication [109] be DENIED, and Ms. Grill's Request for Adjudication [112] be GRANTED. The Court should reduce the Sports Dimensions ANIC to $190,700.00 and hold it in the name of Christian Genitrini d/b/a Sports Dimensions, and the Court should increase the amount of the Joint Claim (No. CF001344) to $24,000.00.

**II.     Report**

    **A.      Facts and Procedural History**

The Receiver adequately summarized the factual background in this matter as follows:

> On March 10, 2010, the Commodity Futures Trading Commission (the "Commission") filed a multi-count complaint against Alan James Watson ("Watson"), Michael Potts ("Potts") and Cash Flow Financial, LLC ("CFF"), alleging that from November 28, 2007, through the time of filing the complaint, the defendants fraudulently solicited and accepted at least $45 million from more than 600 individuals and entities to participate in a commodity pool to trade commodity futures contracts and securities.
>
> In the CFF scheme, Watson and Potts solicited pool participants through "Executive Club Members" ("ECMs") who acted under Watson's and Potts' direction in identifying and soliciting new participants and were compensated in a manner similar to a multilevel marketing program. In addition to ECMs who were compensated directly from CFF, other Marketers received compensation from a separate entity called New Life Inc. ("New Life") which was conducted by ECM Mark Miller. New Life received compensation from CFF in exchange for marketing CFF to investors. New Life would, in turn, pay a portion of the compensation it received from CFF to individuals who marketed or sold or referred CFF to others, who were called Communication Consultants or "CC", "Sub CC" or "Sr CC" (collectively referred to herein as "Marketers"). . . .
>
> The CFF Operating Agreement stated that the CFF pool participant funds would be traded using a trading program selected by Watson and approved by a vote of two-thirds of the members; however no such approval process was ever implemented and Watson invested the money in many different, unapproved schemes, many of which turned out to be fraudulent schemes in their own right, resulting in complete loss of the investment. The pool participants believed the

funds would be invested with a Florida entity specializing in commodities trading, known as "Trade, LLC". However, of the approximately $45 million that was raised, only $8.1 million was actually invested in Trade, LLC for commodities trading. Trade, LLC itself also turned out to be a fraudulent scheme which did not return trading profits to CFF as promised and itself is subject to lawsuits by the Securities and Exchange Commission and the Commodity Futures Trading Commission and is in receivership in Florida. The remaining $37 million and the approximately $2 million received as a return on the Trade, LLC investment, was used for fraudulent, unapproved purposes including: (i) paying approximately $602,929 to reimburse individuals who had lost money in yet another illegal Ponzi scheme known as "Safevest, LLC" in which Watson had induced these individuals to invest; (ii) paying approximately $7,810,622 to existing Investors as purported profits from their investments in classic Ponzi fashion; (iii) paying approximately $2,619,509 in commissions to Watson, Potts and the ECMs; (iv) paying approximately $739,522 in Watson's and his family's day to day living expenses; (v) investing approximately $22,732,244 in various unapproved investments, most of which turned out to be complete losses; and (vi) providing approximately $4,965,026 to relief defendant The Jedburg Group.

On or about March 11, 2011, by Order of this Court, Phillip S. Stenger was appointed temporary Receiver for the assets of Defendants Watson, Potts and CFF. The Receiver was directed and authorized to do the following: assume full control of the corporate defendants and business entities owned by defendants; take exclusive custody, control and possession of all the funds, property and other assets in the possession of or under the control of the defendants; take all steps necessary to secure the residential and business premises of the defendants; preserve, hold and manage all receivership assets and perform all acts necessary to preserve the value of those assets; prevent the withdrawal or misapplication of funds entrusted to the defendants and otherwise protect the interests of customers, clients, pool participants or investors; manage and administer the assets of the defendants; collect all money owed to the defendants; initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal or foreign court necessary to preserve or increase the assets of the defendants; choose, engage, and employ the law firm of Stenger & Stenger, PC, other attorneys, accountants, and other retained personnel as necessary; issue subpoenas to compel testimony of persons or obtain documents and records pertaining to the receivership; open one or more bank accounts as designated depositories for funds of the defendants; and make payments and disbursements from the receivership estate necessary for carrying out the directions of, or exercising the authority granted by the Order of the court.

. . .

At the time the Receiver was appointed, the accounting and business records of CFF (including Investor records) were incomplete, confusing, misleading and in

many cases nonexistent. As a result, the Receiver has used his best efforts to largely recreate the accounting and business records of CFF using available company records and bank records, including wire transfer receipts and cancelled checks. Reconstructing the accounting records has helped the Receiver ascertain what he believes to be the net investment (amount invested less amount returned, from whatever source as further defined in the Investor Claims Procedure . . . ) of each Investor ([the ANIC]). The Receiver also sent information requests to approximately 974 Investors on forms he created for that purpose entitled "Investor Response Forms". The Investor Response Forms requested information regarding the particulars of each Investor's investment. Investor Response Forms were returned by 768 Investors. Using the accounting the Receiver created from bank records and the information disclosed in the Investor Response Forms, as well as other information available to the Receiver, the Receiver has calculated a preliminary ANIC for each known Investor.

(Docket no. 78 at 2-5 (formatting modified) (footnotes omitted).)

Mr. Martin, Mr. Genitrini, and Ms. Grill have each challenged the Receiver's calculation of their ANIC.

### B. Standard of Review

The Requests for Adjudication in this matter are governed by the Investors Claims Procedure as adopted by the Court. (Docket no. 98 (citing docket no. 78-1).) Under that Procedure,

[i]n the event that an Investor Claimant properly requests adjudication of a Receiver's Determination, . . . such matter shall be referred to a Magistrate Judge. The Magistrate Judge shall review the documentation provided by the Investor Claimant and the Receiver. At that time, the Magistrate Judge may make a final determination or set the matter for a hearing and at the conclusion of the hearing make a final determination. The Investor Claimant shall have the burden of proof in any such referral[.] . . .

(Docket no. 78-1 at 12.)

### C. Analysis

#### 1. Kenneth Martin [108]

The Receiver determined that Kenneth Martin and his wife Marina originally invested $10,628.86 in to CFF. (*See* docket no. 119 at 2.) Mr. Martin does not dispute this figure.

4

(*See* docket no. 108.)  The Receiver, however, also determined that Ms. Martin received a commission check in the amount of $151.24 from New Life, which she chose to reinvest in CCF. (*See* docket no. 119 at 2.)  Thus, he determined that the Martins' total investment in CFF was $10,477.62.  And as the Receiver notes, the Investor Claims Procedure requires that the ANIC for an "Insubstantial Marketer," which is defined as "an ECM who received less than $5,000 in marketing compensation from CFF, Watson, Potts, and/or another ECM or marketer," "shall be reduced by 50% for purposes of calculating their share of distribution to be received from the estate."  Therefore, the Receiver determined that the Martins are entitled to $5,238.81.[1]  (*Id.* at 3.)

While Mr. Martin briefly discusses the $151.24 reinvestment into CFF, his general assertion is that "CFF Club was a ponzi scheme that took all my money[, and f]or the courts and the receiver to reduce my losses arbitrarily is not right."  (Docket no. 108 at 1.)  Thus, he argues, his ANIC should be $10,628.84, and because he lost 100% of his investment, he should be refunded 100% of his investment.  (*Id.*)

While the undersigned acknowledges that the Martins (and other CFF investors) lost their investments, the Investor Claims Procedure is intended as a means by which the Receiver, and the Court, can provide some recovery for victims of the CFF scheme.  And while the Court sympathizes with all of the victims, such a Procedure is necessary because a full recovery for all of the victims is unlikely, if not impossible.  Thus, having already adopted the Investor Claims Procedure, the Court need only determine whether the Receiver properly calculated the Martins' ANIC.  The

---

[1] The Receiver notes that the "reinvestment" of $151.24 is "taken into consideration in identifying subsequent deposits into CFF."  (Docket no. 119 at 4.)

undersigned finds that he did. The Martins received a $151.24 return on their investment, which places them in the category of an "Insubstantial Marketer," requiring a 50% reduction of their ANIC. And while the Court recognizes that their loss may not feel "insubstantial," the reduction is not arbitrary. Therefore, the Court should deny Mr. Martin's Request for Adjudication and set the Martins' ANIC at $5,238.81.

### 2. Elizabeth Grill [112] and Christian Genitrini [109]

While filed as separate challenges to their ANICs, the Requests for Adjudication of Elizabeth Grill and Christian Genitrini are interrelated. Mr. Genitrini filed his Request on behalf of Sports Dimensions, Inc, with regard to claim no. CF001119. (*See* docket no. 109.) Related to this request, however, are six other claims or entities: (1) Claim No. CF000370 in the name of Lucia Fassetta; (2) Claim No. CF000406 in the name of Christian Genitrini; (3) Claim No. CF001344 in the names of Christian Genitrini and Elizabeth Grill (the claim also at issue in Ms. Grill's Request); (4) Claim No. CF001325 in the name of Art Plus; (5) an unlisted and alleged claim in the name of Lele Corp; and (6) an unlisted and alleged claim in the name of AmeriGen Gloversville Corp. (*See* docket nos. 109 at 1 and 120 at 3.)

The Receiver originally determined that the following claimants were entitled to the following amounts:

- Lucia Fassetta ("Fasetta Claim") $174,000.04
- Christian Genitrini ("Genitrini Claim"): $10,000.25
- Christian Genitrini and Elizabeth Grill ("Joint Claim"): $24,000.00
- Sports Dimensions, Inc. ("Sports Dimensions Claim"): $0.00
- Art Plus ("Art Plus Claim"): $16,700.00

6

(*See* docket no. 120 at 3.) Mr. Genitrini submitted a response to these determinations, indicating that the Fassetta Claim, the Joint Claim, and the Art Plus should be consolidated and attributed to Sports Dimensions, Inc., and that two additional claims for Lele Corp (in the amount of $500) and for AmeriGen (in the amount of $2,800) should be added to the Sports Dimensions Claim, for a total Claim in the amount of $218,000.04. The Receiver informed Mr. Genitrini that to properly consolidate the claims, the individual claimants would each have to submit a Statement of Claim asserting that they *disagreed* with the ANIC as determined and confirming that the individual investments were made on behalf of Sports Dimensions. (*See* docket no. 120 at 4-5.)

On or about June 5, 2014, the Receiver received a second packet of claim forms, which included the following, each dated May 29, 2014: (1) a revised Statement of Claim related to the Joint Claim purportedly signed by Genitrini and Grill disagreeing with the ANIC of $24,000 and asserting a claim of $0.00; (2) a Statement of Claim form signed by Fassetta disagreeing with the ANIC of $174,000.04 and asserting a claim of $0.00; and (3) a Statement of Claim form signed by Genitrini as Director of Art Plus disagreeing with the ANIC of $16,700 and asserting a claim of $0.00. (*See* docket no. 120 at 6.) The forms also asserted that the claims "should be added to [the Sports Dimensions Claim]." (*Id.*)

Based on these forms, the Receiver amended the ANIC for each of the entities, recognizing an ANIC of $0.00 for the Fasetta Claim, the Joint Claim, and the Art Plus Claim and an ANIC of $214,700.04 for the Sports Dimensions Claim. (*See* docket no. 120 at 2.) As discussed further herein, the Receiver did not include the alleged $2,800 claim for AmeriGen or the alleged $500 claim for Lele Corp.

      **a.**      **Elizabeth Grill's Request for Adjudication [112]**

In her Request for Adjudication, Elizabeth Grill asserts that she did not sign the Statement of Claim form disagreeing with her interest in the Joint Claim. (Docket no. 112.) She asserts, instead, that her signature was forged and that she has not disclaimed and does not intend to disclaim any of her interest in the CFF distributions. Therefore, she requests that the Sports Dimensions ANIC be reduced by $24,000 and that the Joint Claim ANIC be increased by $24,000. The Receiver recommends that Ms. Grill's request be granted. Moreover, the factual background related to this matter supports her request. According to the Receiver, in or around August 2014, the Receiver became aware that the mailing address for Ms. Grill was incorrect. After determining a proper address, Ms. Grill notified the Receiver that she had not seen or signed any of the documents related to the Joint Claim and that she was not aware of the Joint Claim. She then provided the Receiver with an Affidavit stating that she did not sign the Statement of Claim form and that she did not intend to release her right to the claim. Therefore, based on the allegations of forgery, the undersigned recommends that Ms. Grill's Request for Adjudication be granted.

### b.     The Sports Dimensions Request for Adjudication [109]

Through the Sports Dimensions Request for Adjudication, Mr. Genitrini asserts that the Receiver improperly omitted the investments from Lele Corp ($500) and AmeriGen ($2,800). (Docket no. 109 at 1-2.) The Receiver does not dispute that Lele Corp and AmeriGen made such investments. (Docket no. 120 at 7-8.) Instead, the Receiver asserts that "neither AmeriGen nor Lele Corp submitted a Statement of Claim to the Receiver by the Claims Bar Date of May 26, 2014, and therefore neither entity has a claim in the Receivership." (*Id.* at 7.)

Mr. Genitrini does not dispute that AmeriGen and Lele Corp failed to submit a Statement of Claim. He argues, however, that the Receiver incorrectly listed the two entities as "Amerione"

and "Lela Corp," and because the names were incorrect, he never received an appropriate Statement of Claim form to fill out and return. (Docket no. 109.) While factually accurate, Mr. Genitrini's argument is inapposite. As the Receiver notes, under the Investor Claims Procedure, "'No Investor or Investor Claimant who has failed to timely send an appropriate Statement of Claim Form, Request for Redetermination, or Request for Adjudication, shall be permitted to object to the barring or treatment of its Investor Claim on the basis: (a) that the Receiver failed to mail, or that such Investor or Investor Claimant failed to receive, a copy of the Claims Procedure Notice, the Statement of Claim or the relevant Final Determination or Partial Determination Notice . . . or (c) that an Investor's name and/or proper contact information was not properly reflected on the Receiver's list.'" (Docket no. 120 at 9 (quoting docket no. 98-3 at 11-12 ¶ xiii).) Thus, even assuming that Mr. Genitrini is correct, his Request for Adjudication must be denied.

Additionally, in his Response to Mr. Genitrini's request, the Receiver notes that Sports Dimensions, Inc., a Florida Profit Corporation, was administratively dissolved in September 2010 and is no longer in existence. (*See* docket no. 120.) Moreover, while the Receiver acquiesced to Mr. Genitrini's request to consolidate all of the investments into the Sports Diminsions Claim, Sports Dimensions never invested any funds into CFF. Thus, based on the dissolution of Sports Dimensions, its failure to invest any of its own funds, and the questionable nature of Ms. Grill's purported release of her claims, the Receiver recommends that the Court amend the claim so that the funds related to the Sports Dimensions Claim are held in the name of Christian Genitrini, d/b/a Sports Dimensions. The undersigned agrees.

**D.     Conclusion**

For the reasons stated herein, Mr. Martin's Request for Adjudication [108] should be DENIED, Mr. Genitrini's Request for Adjudication [109] should be DENIED, and Ms. Grill's Request for Adjudication [112] should be GRANTED. The Court should reduce the Sports Dimensions ANIC to $190,700.00 and hold it in the name of Christian Genitrini d/b/a Sports Dimensions, and the Court should increase the amount of the Joint Claim (No. CF001344) to $24,000.

## III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address

each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: December 20, 2014					s/ Mona K. Majzoub
							MONA K. MAJZOUB
							UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

	I hereby certify that a copy of this Report and Recommendation was served upon Kenneth Martin, Christian Genitrini, Elizabeth Grill, and Counsel of Record on this date.


Dated: December 20, 2014					s/ Lisa C. Bartlett
							Case Manager

11