# STENGER & STENGER
A MICHIGAN PROFESSIONAL CORPORATION

PHILLIP S. STENGER
  ADMITTED IN MI, KY, MN, GA, CO, & OH
KAY GRIFFITH HAMMOND
  ADMITTED IN MI
JOSEPH M. JAMMAL
  ADMITTED IN MI, MN, WI, TN & OH
AARON S. MURRAY
  ADMITTED IN IN
ANTHONY J. HUSPASKA
  ADMITTED IN OH
KEITH A. SPARKS
  ADMITTED IN MI, IN, NJ, KY & CO
M. KYLE FLOYD
  ADMITTED IN GA
PRESTON U. NATE
  ADMITTED IN MI
ROBERT L. HENGGE
  ADMITTED OH, KY & IN
MICHELLE R. ZYLSTRA
  ADMITTED MI

2618 EAST PARIS AVENUE, S.E.
GRAND RAPIDS, MICHIGAN 49546

TELEPHONE (616) 940-1190
FACSIMILE (616) 940-1192
TOLL FREE (888) 305-7775

JOSHUA A. STIERS
  ADMITTED IN NY, NJ
PHILLIP A. LAMERE
  ADMITTED IN IN
R. GARY MARSCHHAUSEN
  ADMITTED IN CO
SHERYLE L. DICKENS
  ADMITTED IN GA
OF COUNSEL:
LEE SILVER
  ADMITTED IN MI
DOUGLAS W. VANESSEN
  ADMITTED IN MI
DENISE M. HALLETT
  ADMITTED IN IN & IL
CINQUE AXAM
  ADMITTED IN GA
ERIC W. SITLER
  ADMITTED IN TN

April 24, 2019

**<u>VIA UPS</u>**

The Honorable Mark A. Goldsmith
United States District Court, Eastern District of Michigan
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 815
Detroit, MI 48226

Re:  *Commodity Futures Trading Commission v. Alan James Watson, et al.*
     Case No: 11-cv-10949-MAG-MKM

Dear Judge Goldsmith:

I submit the following as my eighth and final report[1] as Temporary Receiver for the assets of Defendants Cash Flow Financial LLC ("**CFF**"), Alan James Watson ("**Watson**") and Michael S. Potts ("**Potts**") (collectively, "**the Defendants**") and certain assets of Relief Defendant, The Jedburgh Group ("**Jedburgh Group**" or "**Jedburgh**").

---

[1] This will supplement my previous seven reports dated May 10, 2011 (ECF No. 32); September 5, 2012 (ECF No. 69); August 28, 2014 (ECF No. 110); January 20, 2015 (ECF No. 128); May 30, 2017 (ECF No. 180); April 19, 2018 (ECF No. 189); and September 12, 2018 (ECF No. 203).

272342

**STENGER & STENGER**

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 24, 2019
Page 2 of 11

### WINDING UP SUMMARY

The background of this case, detailed in my *Motion and Memorandum for Second Distribution of Receivership Assets* ("**Second Distribution Motion**") dated June 14, 2018 (ECF No. 195), is well known to this Court and, in the interests of economy and brevity, will not be repeated here. This report will address events which have occurred in the Receivership since my seventh report to the Court dated September 12, 2018 (ECF No. 203).

### CESSATION OF COLLECTION EFFORTS

Collection efforts have been suspended on the two outstanding recovery matters listed below for the reasons stated:

**A.    Jedburgh Group Disgorgement Obligation.** The Consent Order and Final Judgment entered against Jedburgh Group on August 15, 2012 (ECF No. 67), ordering Jedburgh Group to pay a principal disgorgement obligation of $21,568.15 to the Receiver, plus post-judgment interest, remains unsatisfied. Discovery in aid of execution conducted in the related case of *Stenger v. Freeman, et al.*, Case No.14-cv-10999-MAG-RSW (E.D. Mich.) ("*Freeman*"), discussed below, has failed to reveal any Jedburgh Group assets.

**B.    *Stenger v. Freeman*.** On the $1.5 million Amended Judgment entered against Keith Freeman on December 1, 2015, $1.495 million remains unsatisfied, following recovery of $4,637.79 in garnishment proceeds from Freeman's Bank of America account. Although the Amended Judgment (which has been registered in the Northern, Middle and Southern Districts of Florida) technically remains enforceable until December 1, 2025, there are no known practical prospects for further recovery. I have concluded that it is not in the Receivership's best interest to pursue further collection efforts on the Amended Judgment in *Freeman*, because discovery in aid of execution has confirmed that Jedburgh Group, long defunct, has no assets, and Freeman, who has spent almost all of the $150,000 life insurance benefits he received following the death of his wife last year, currently has no other known recoverable assets and is earning little to nothing from his business as a private investigator.

**STENGER & STENGER**

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 24, 2019
Page 3 of 11

### FINAL ACCOUNTING

For the Court's convenience, a copy of the **Final Accounting** prepared by the Estate's retained accountants, Plante Moran, is attached as **Exhibit A-1** and incorporated herein by reference. The Final Accounting statement is through February 28, 2019.

As reflected on Exhibit A-1, from March 11, 2011, the date of appointment of the Receiver, through February 28, 2019, the Receiver has marshalled a total of **$9,119,820.17,** inclusive, in pertinent part, of the following: (1) **$3,277,320.09** from Cash Flow Financial, Alan Watson and Jedburgh Group; (2) **$3,788,304.89** in restitution receipts, including, since my last report dated September 12, 2018, **$345.71** from Jason Michael Meyer, and **$4,637.79** in garnishment proceeds from Keith Freeman's Bank of America account); (3) **$39,763.81** in interest earned through February 28, 2019; and (4) **$2,009,903.66** from the Trade LLC receivership.

Cash disbursements from the estate from March 25, 2011 through February 28, 2019 totaled **$9,011,799.45,** inclusive, in pertinent part, of the following (1) **$7,269,838.36** distributed to investors through February 28, 2019, as detailed below; (2) **$18,025.67** in bank service and check charges; (3) **$1,599,455.35** in professional fees and expenses (per Court Orders), inclusive, in pertinent part, of **$1,289,999.29** for the services of Stenger & Stenger.

After the total expenses of **$9,011,799.45** through February 28, 2019, the **net assets** of the estate total **$108,020.72.**

### DISTRIBUTIONS OF RECEIVERSHIP ASSETS

As detailed below and reflected on the Final Accounting (Ex. A-1), Receivership estate assets totaling **$7,269,838.36** (through February 28, 2019) have been distributed to 766 Approved Investor Claimants in the ratio of their Adjusted Net Investor Claim ("**ANIC**"), representing a return of **22.775%** of their combined ANICs totaling **$31,920,006.64**.
  A.  **FIRST DISTRIBUTION**:

**STENGER & STENGER**

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 24, 2019
Page 4 of 11

On December 7, 2015, my first distribution motion ("**Distribution Motion**") (ECF No. 160) and supporting **Distribution Memorandum** (ECF No. 161) were filed with the Court, recommending distribution of a first interim **Distribution Fund** of **$6,500,000** to Approved Investor Claimants in the ratio of their Adjusted Net Investor Claim ("**ANIC**"), representing a return of approximately 20.3% of each Approved Investor Claimant's ANIC. This Court's *Order Ratifying Approved Investor Claimants List and Authorizing Distribution of Receiver Assets* ("**Distribution Approval Order**") (ECF No. 166) was entered on January 4, 2016.

Distribution checks totaling **$6,500,000** were mailed on February 3, 2016, to the Approved Investor Claimants by U.S. First Class Mail to their last known addresses. A total of 768 checks totaling **$6,478,164.35** were timely cashed (inclusive of two checks reissued pursuant to Small Estate Affidavits), and eight (8) checks, totaling **$21,835.65**, were uncashed.[2]

### B. SECOND DISTRIBUTION:

On June 14, 2018, my second distribution motion and memorandum (**"Second Distribution Motion"**) (ECF No.195) was filed with the Court, recommending distribution of a **Second** [and likely final] **Distribution Fund** of **$800,000.00** to Reconciled Approved Investor Claimants in the ratio of their Adjusted Net Investor Claim ("**ANIC**"), representing a return of approximately 2.5% of each Approved Investor Claimant's ANIC. A copy of the Second Distribution Motion (without exhibits) is attached as Exhibit A-2 and incorporated herein by reference.

On June 21, 2018, Your Honor's *Order Ratifying Approved Investor Claimants List and Authorizing Second Distribution of Receiver Assets* ("**Second**

---

[2] Pursuant to the Distribution Approval Order, checks which were returned or had not been cashed by June 8, 2016 were void, the right to receive such payments terminated, and the funds ($21,835.65) otherwise distributable to the Approved Investor Claimants were returned to the Distribution Fund, to be disposed of according to the Court's further instructions.

**STENGER & STENGER**

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 24, 2019
Page 5 of 11

**Distribution Approval Order**") (ECF No. 196) was entered, a copy of which is attached as **Exhibit A-2** and incorporated herein by reference.

On August 31, 2018, 769 second distribution checks totaling $800,000.00 were mailed to the Approved Investor Claimants by U.S. First Class Mail to their last known addresses. Positive Pay security procedures were, as ordered by the Court, implemented to ensure proper negotiation of each distribution check. Through February 28, 2019, 739 checks had cleared Positive Pay, totaling $786,596.05, and 30 checks remained uncashed, totaling $13,403.98.[3]

Pursuant to the Second Distribution Approval Order (Ex. A-2, ECF No. 196, PageID.3729), second distribution checks which are returned or which have not been cashed within one hundred and twenty (120) calendar days from the date of mailing of such checks shall be void, the right to receive such payments shall terminate, subject only to the Receiver's sole discretion, and the amounts otherwise distributable to such Approved Claimants shall be returned to the Second Distribution Fund and disposed of according to the Court's further instructions.

The Second Distribution Approval Order further directed the Receiver, in his mailing of the second distribution checks, to warn the Approved Claimants of this potential loss of rights and the need to promptly cash their checks, by means of an **Investor Second Distribution Letter** (a copy of which is attached as **Exhibit A-4** and incorporated herein by reference), which the Court approved as to form. The Receiver complied with that directive on August 31, 2018, when copies of the Investor Second Distribution Letters were sent to Approved Claimants by U.S. First Class mail, along with their second distribution checks.

Because of the joint ownership of some claims, the Second Distribution Approval Order (Ex. A-2, ECF No. 196, Page ID.3729-3730) also directed the

---

[3] All reasonable efforts have been conducted to find current addresses for uncashed investors, including, but not limited to, conducting Accurint-TLO searches on all distribution packages returned as undeliverable or remaining uncashed, attempting to reach investors with no identifiable new addresses by email, and reissuing checks to newly identified addresses.

**STENGER & STENGER**

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 24, 2019
Page 6 of 11

Receiver, prior to mailing the second distribution checks, to mail to each Co-Investor Claimant a **Letter to Co-Investor Claimant** which the Court approved as to form (a copy of which is attached as **Exhibit A-5**, and incorporated herein by reference), advising Co-Investor Claimants as to which address the checks will be mailed, and, further directed that a copy of the Investor Second Distribution Letter which was to be mailed with the distribution checks (attached Ex. A-3) was also to be mailed to each Co-Investor Claimant so that each will be informed as to when the checks are mailed. In processing the Second Distribution, the Receiver complied with both of those directives.

The Second Distribution Approval Order (Ex. A-2, ECF No. 196, Page ID.3730-3731) also directed the Receiver to follow a Small Estate Affidavit procedure upon notification by representatives and/or family members of deceased claimants that they were unable to cash or negotiate checks made payable to a deceased claimant, or a deceased claimant's estate. No such notifications were received with respect to the second distribution checks.

As of February 28, 2019, a total of 30 Approved Investor Claimants failed to timely cash their second distribution checks, totaling **$13,403.98**. Those uncashed checks are permanently null and void. A list of Approved Investor Claimants with uncashed checks, including the amounts of their uncashed checks, is attached as **Exhibit A-6** and incorporated herein by reference.

While it is possible that the Receiver may recover further restitution payments pursuant to restitution orders entered against various defendants in related criminal actions (i.e., *USA v. Diane Aurelia Bishop*, and *USA v. Jason Michael Meyer*), most restitution payments received to date are relatively small in amount, and it is very unlikely that any restitution checks that may come through hereafter would be of sufficient size to justify any further distributions to investors. If, however, outstanding restitution orders generate sizeable restitution payments to the Receiver before the Receivership estate is closed, we would consider moving for a further distribution before closing the Receivership estate.

**QUALIFIED SETTLEMENT FUND TAX RETURNS**

**STENGER & STENGER**

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 24, 2019
Page 7 of 11

No taxes are due and owing from the CFTC v Cash Flow Financial et al Combined Settlement Fund (the "**QSF**").

There are currently four (4) open Form 1120-SF qualified settlement fund tax returns ("**QSF returns**") for calendar years ending December 31, 2015, December 31, 2016, December 31, 2017, and December 31, 2018.

The QSF return for calendar year 2015 was filed with the IRS on March 16, 2016, along with a request for prompt assessment, and a copy of the Receiver's filing letter to the IRS dated March 16, 2016 is attached as **Exhibit A-7** and incorporated herein by reference. The QSF return for calendar year 2016 was filed with the IRS on March 7, 2017, along with a request for prompt assessment, and a copy of the Receiver's filing letter to the IRS dated March 7, 2017 is attached as **Exhibit A-8** and incorporated herein by reference. The QSF return for calendar year 2017 was filed with the IRS on February 14, 2018, along with a request for prompt assessment, and a copy of the Receiver's filing letter to the IRS dated February 14, 2018 is attached as **Exhibit A-9** and incorporated herein by reference. The QSF return for calendar year 2018 was filed with the IRS on March 11, 2019, along with a request for prompt assessment, and a copy of the Receiver's filing letter to the IRS dated March 11, 2019, is attached as **Exhibit A-10** and incorporated herein by reference.

The IRS has advised that heavy workloads are delaying their response to outstanding prompt assessment requests. The statute of limitations applicable to QSF returns is three (3) years. Accordingly, the limitations periods on the estate's outstanding QSF returns for calendar years 2015, 2016, 2017 and 2018 (collectively, the "**Open QSF Returns**") will expire on March 16, 2019; March 30, 2020; February 14, 2021; and March 11, 2022, respectively.

In his contemporaneously filed Receiver's *Motion and Memorandum for Entry of an Order Approving the Receiver's Final Report, Final Accounting and Compensation Request and Closing the Estate* ("**Closing Motion**"), the Receiver seeks the following: (1) this Court's approval and authority, pending IRS clearance of the Open QSF Returns, to hold back a **Reserve Fund** of approximately $69,675.91, comprised of the residual estate assets after payment of the Receiver's

Case 2:11-cv-10949-MAG-MKM  ECF No. 212, PageID.3917  Filed 04/24/19  Page 8 of 11

**STENGER & STENGER**

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 24, 2019
Page 8 of 11

final Compensation Motion No. 24, discussed below, to be held in trust in the CFF Operating Account as a reserve pending IRS clearance of the Open QSF Returns; (2) this Court's approval and authority to file a petition to reopen the estate and seek further compensation out of the Reserve Fund if obtaining IRS tax clearance becomes more complicated than the Receiver anticipates, or other issues arise; (3) this Court's approval and authority to disgorge to the Commission for turnover to the United States Treasury, without necessity of further court orders, the balance of the Reserve Fund remaining after IRS clearance, and any final expenses that may be incurred in obtaining said clearance, in closing down the estate, and responding to other issues, if any, that may arise; and (4) this Court's approval and authority, after entry of the Closing Order, to make any additional filings with the IRS, state or local authorities which are necessary or incident to the closing of the Receivership estate.

## COMPENSATION MOTION NO. 24

Pursuant to the terms of the Statutory Restraining Order appointing the Receiver (ECF No. 5, Paragraph G on Page 12), the Receiver and his Retained Personnel are entitled, subject to approval of the Court, to be reimbursed for expenses incurred and reasonable compensation in amounts commensurate with the services performed pursuant to the Statutory Restraining Order, to be paid from the Receivership estate assets.

A copy of the Receiver's Compensation and Expenses Motion No. 24 ("**Compensation Motion No. 24**"), which is being filed concurrent with this Final Report and the Closing Motion, is attached as **Exhibit A-11** and incorporated herein by reference. Compensation Motion No. 24 seeks approval of the following fees and expenses incurred by the Receiver and his Retained Personnel for the time period of October 1, 2018 through February 28, 2019, totaling $38,344.81 in the aggregate, which fees and expenses are reasonable and commensurate with the services performed: Stenger & Stenger's fees of $22,382.40 and expenses of $15,962.38 (117.30 hrs). Those expenses include retained counsel Holland & Knight's fees and expenses of $4,013.96 and $6,150.82, incurred during September 2018 and October 2018, respectively, and retained accountants Plante Moran's professional fees totaling $2,906.00 for tax reporting services performed for the period of January 10,

**STENGER & STENGER**

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 24, 2019
Page 9 of 11

2019 through February 28, 2019. Detailed billing statements of the Receiver and his Retained Personnel are attached as Exhibits A, B and C, respectively, to Compensation Motion No. 24. Copies of this Final Report, Compensation Motion No. 24 and the supporting billing statements have previously been provided to the Commission.

 I am requesting that the Court unfreeze and authorize consolidation of the Receivership Estate's bank accounts at Fifth Third Bank and authorize transfer of the current balances in the CFF Distribution Account (Account No. xxxx2638) and CFF Savings Account (Account No. xxxx2620) into the CFF Operating Account (Account No. xxxx2612).

 I am requesting that the Court approve Compensation Motion No. 24 and authorize payment of the aggregate sum of $38,344.81 from the CFF Operating Account (Account No. xxxx2612) at Fifth Third Bank.

## CLOSING THE ESTATE

 I respectfully request that the Court enter the proposed *Order Approving the Receiver's Final Report, Final Accounting and Compensation Request and Closing the Estate* ("**Proposed Closing Order**"), a copy of which is attached as **Exhibit A-12** and incorporated herein by reference.

* * *

 I hope this Final Report has been informative. I would be happy to discuss any aspect of this Report with the Court, the Commission or counsel for the parties.

Very truly yours,<br>
**STENGER & STENGER, P.C.**

**STENGER & STENGER**

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 24, 2019
Page 10 of 11

*Phillip Stenger*
Phillip S. Stenger
Temporary Receiver

C:   Daniel J. Grimm, Peter A. Caplan, Harry H. Wise, III, Sonya N. Goff, and Erika L. Butler.

Attachments (12):

   A-1.  Final Accounting;
   A-2.  Second Distribution Motion (without exhibits);
   A-3.  Second Distribution Approval Order;
   A-4.  Investor Second Distribution Letter;
   A-5.  Letter to Co-Investor Claimant;
   A-6.  List of Approved Claimants with Uncashed Checks;
   A-7.  Letter to IRS Filing 2015 QSF Return dated March 16, 2016;
   A-8.  Letter to IRS Filing 2016 QSF Return dated March 7, 2017;
   A-9.  Letter to IRS Filing 2017 QSF Return dated February 14, 2018;
   A-10. Letter to IRS Filing 2018 QSF Return dated March 11, 2019;
   A-11. Compensation Motion No. 24
         Ex. A:   Stenger & Stenger's Invoices
         Ex. B:   Holland & Knight's Invoices
         Ex. C:   Plante Moran's Invoices
         Ex. D:   Affidavit of Phillip S. Stenger
   A-12. Proposed Closing Order.

**STENGER & STENGER**

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 24, 2019
Page 11 of 11

# CERTIFICATE OF SERVICE

Kay Griffith Hammond, an attorney, hereby certifies that she caused a copy of the foregoing *Receiver's Eighth and Final Report to the Court* and Exhibits thereto, to be served via electronic filing on the following ECF parties on April 24, 2019:

Daniel J. Grimm
U.S. Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, N.W.
Washington, D.C. 20581
dgrimm@cftc.gov

Peter A. Caplan
United States Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3211
peter.caplan@usdoj.gov

Harry H. Wise, III
Attorney for The Jedburgh Group
43 West 43rd Street, Suite 109
New York, NY 10036
hwiselaw@aol.com

Sonya N. Goll
Stevenson & Bullock PLC
29200 Southfield Rd., Ste. 210
Southfield, MI 48076
sgoll@sbplclaw.com

Erika Lorraine Davis
Butler Davis, PLLC
P.O. Box 2411
Detroit, MI 48202-9998
erika@butlerdavispllc.com

DATED:  April 24, 2019.          /s/ Kay Griffith Hammond_____
                                  Kay Griffith Hammond (P37425)