*CFTC v. Watson, et al.*
Case No. 11-CV-10949

**EXHIBIT A**
**To**
**MOTION AND MEMORANDUM FOR ENTRY OF AN ORDER**
**APPROVING THE RECEIVER'S FINAL REPORT, FINAL ACCOUNTING**
**AND COMPENSATION REQUEST AND CLOSING THE ESTATE**

*Final Report (Part I of II)*

# STENGER & STENGER

A MICHIGAN PROFESSIONAL CORPORATION

PHILLIP S. STENGER
    ADMITTED IN MI, KY, MN, GA, CO, & OH
KAY GRIFFITH HAMMOND
    ADMITTED IN MI
JOSEPH M. JAMMAL
    ADMITTED IN MI, MN, WI, TN & OH
AARON S. MURRAY
    ADMITTED IN IN
ANTHONY J. HUSPASKA
    ADMITTED IN OH
KEITH A. SPARKS
    ADMITTED IN MI, IN, NJ, KY & CO
M. KYLE FLOYD
    ADMITTED IN GA
PRESTON U. NATE
    ADMITTED IN MI
ROBERT L. HENGGE
    ADMITTED OH, KY & IN
MICHELLE R. ZYLSTRA
    ADMITTED MI

2618 EAST PARIS AVENUE, S.E.
GRAND RAPIDS, MICHIGAN 49546

TELEPHONE (616) 940-1190
FACSIMILE (616) 940-1192
TOLL FREE (888) 305-7775

JOSHUA A. STIERS
    ADMITTED IN NY, NJ
PHILLIP A. LAMERE
    ADMITTED IN IN
R. GARY MARSCHHAUSEN
    ADMITTED IN CO
SHERYLE L. DICKENS
    ADMITTED IN GA
OF COUNSEL:
    LEE SILVER
        ADMITTED IN MI
    DOUGLAS W. VANESSEN
        ADMITTED IN MI
    DENISE M. HALLETT
        ADMITTED IN IN & IL
    CINQUE AXAM
        ADMITTED IN GA
    ERIC W. SITLER
        ADMITTED IN TN

April 1, 2019

***VIA UPS***

The Honorable Mark A. Goldsmith
United States District Court, Eastern District of Michigan
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 815
Detroit, MI. 48226

Re:   *Commodity Futures Trading Commission v. Alan James Watson, et al.*
      Case No: 11-cv-10949-MAG-MKM

Dear Judge Goldsmith:

     I submit the following as my eighth and final report[1] as Temporary Receiver for the assets of Defendants Cash Flow Financial LLC ("**CFF**"), Alan James Watson ("**Watson**") and Michael S. Potts ("**Potts**") (collectively, "**the Defendants**") and certain assets of Relief Defendant, The Jedburgh Group ("**Jedburgh Group**" or "**Jedburgh**").

---

[1] This will supplement my previous seven reports dated May 10, 2011 (ECF No. 32); September 5, 2012 (ECF No. 69); August 28, 2014 (ECF No. 110); January 20, 2015 (ECF No. 128); May 30, 2017 (ECF No. 180); April 19, 2018 (ECF No. 189); and September 12, 2018 (ECF No. 203).

272342

STENGER & STENGER

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 1, 2019
Page 2 of 10

## WINDING UP SUMMARY

The background of this case, detailed in my *Motion and Memorandum for Second Distribution of Receivership Assets* ("**Second Distribution Motion**") dated June 14, 2018 (ECF No. 195), is well known to this Court and, in the interests of economy and brevity, will not be repeated here. This report will address events which have occurred in the Receivership since my seventh report to the Court dated September 12, 2018 (ECF No. 203).

### CESSATION OF COLLECTION EFFORTS

Collection efforts have been suspended on the two outstanding recovery matters listed below for the reasons stated:

**A.     Jedburgh Group Disgorgement Obligation.**   The Consent Order and Final Judgment entered against Jedburgh Group on August 15, 2012 (ECF No. 67), ordering Jedburgh Group to pay a principal disgorgement obligation of $21,568.15 to the Receiver, plus post-judgment interest, remains unsatisfied. Discovery in aid of execution conducted in the related case of *Stenger v. Freeman, et al.*, Case No.14-cv-10999-MAG-RSW (E.D. Mich.) ("***Freeman***"), discussed below, has failed to reveal any Jedburgh Group assets.

**B.     *Stenger v. Freeman.***     On the $1.5 million Amended Judgment entered against Keith Freeman on December 1, 2015, $1.495 million remains unsatisfied, following recovery of $4,637.79 in garnishment proceeds from Freeman's Bank of America account.   Although the Amended Judgment (which has been registered in the Northern, Middle and Southern Districts of Florida) technically remains enforceable until December 1, 2025, there are no known practical prospects for further recovery.   I have concluded that it is not in the Receivership's best interest to pursue further collection efforts on the Amended Judgment in *Freeman*, because discovery in aid of execution has confirmed that Jedburgh Group, long defunct, has no assets, and Freeman, who has spent almost all of the $150,000 life insurance benefits he received following the death of his wife last year, currently has no other known recoverable assets and is earning little to nothing from his business as a private investigator.

STENGER & STENGER

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 1, 2019
Page 3 of 10

## FINAL ACCOUNTING

For the Court's convenience, a copy of the **Final Accounting** prepared by the Estate's retained accountants, Plante Moran, is attached as **Exhibit A-1** and incorporated herein by reference. The Final Accounting statement is through February 28, 2019.

As reflected on Exhibit A-1, from March 11, 2011, the date of appointment of the Receiver, through February 28, 2019, the Receiver has marshalled a total of **$9,119,820.17,** inclusive, in pertinent part, of the following: (1) **$3,277,320.09** from Cash Flow Financial, Alan Watson and Jedburgh Group; (2) **$3,788,304.89** in restitution receipts, including, since my last report dated September 12, 2018, **$345.71** from Jason Michael Meyer, and **$4,637.79** in garnishment proceeds from Keith Freeman's Bank of America account); (3) **$39,763.81** in interest earned through February 28, 2019; and (4) **$2,009,903.66** from the Trade LLC receivership.

Cash disbursements from the estate from March 25, 2011 through February 28, 2019 totaled **$9,011,799.45,** inclusive, in pertinent part, of the following (1) **$7,269,838.36** distributed to investors through February 28, 2019, as detailed below; (2) **$18,025.67** in bank service and check charges; (3) **$1,599,455.35** in professional fees and expenses (per Court Orders), inclusive, in pertinent part, of **$1,289,999.29** for the services of Stenger & Stenger.

After the total expenses of **$9,011,799.45** through February 28, 2019, the **net assets** of the estate total **$108,020.72.**

## DISTRIBUTIONS OF RECEIVERSHIP ASSETS

As detailed below and reflected on the Final Accounting (Ex. A-1), Receivership estate assets totaling **$7,269,838.36** (through February 28, 2019) have been distributed to 766 Approved Investor Claimants in the ratio of their Adjusted Net Investor Claim ("**ANIC**"), representing a return of **22.775%** of their combined ANICs totaling **$31,920,006.64.**

STENGER & STENGER

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 1, 2019
Page 4 of 10

## A. FIRST DISTRIBUTION:

On December 7, 2015, my first distribution motion ("**Distribution Motion**") (ECF No. 160) and supporting **Distribution Memorandum** (ECF No. 161) were filed with the Court, recommending distribution of a first interim **Distribution Fund** of **$6,500,000** to Approved Investor Claimants in the ratio of their Adjusted Net Investor Claim ("**ANIC**"), representing a return of approximately 20.3% of each Approved Investor Claimant's ANIC. This Court's *Order Ratifying Approved Investor Claimants List and Authorizing Distribution of Receiver Assets* ("**Distribution Approval Order**") (ECF No. 166) was entered on January 4, 2016.

Distribution checks totaling **$6,500,000** were mailed on February 3, 2016, to the Approved Investor Claimants by U.S. First Class Mail to their last known addresses. A total of 768 checks totaling **$6,478,164.35** were timely cashed (inclusive of two checks reissued pursuant to Small Estate Affidavits), and eight (8) checks, totaling **$21,835.65**, were uncashed.[2]

## B. SECOND DISTRIBUTION:

On June 14, 2018, my second distribution motion and memorandum ("**Second Distribution Motion**") (ECF No.195) was filed with the Court, recommending distribution of a **Second** [and likely final] **Distribution Fund** of **$800,000.00** to Reconciled Approved Investor Claimants in the ratio of their Adjusted Net Investor Claim ("**ANIC**"), representing a return of approximately 2.5% of each Approved Investor Claimant's ANIC. A copy of the Second Distribution Motion (without exhibits) is attached as Exhibit A-2 and incorporated herein by reference.

---

[2] Pursuant to the Distribution Approval Order, checks which were returned or had not been cashed by June 8, 2016 were void, the right to receive such payments terminated, and the funds ($21,835.65) otherwise distributable to the Approved Investor Claimants were returned to the Distribution Fund, to be disposed of according to the Court's further instructions.

**STENGER & STENGER**

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 1, 2019
Page 5 of 10

On June 21, 2018, Your Honor's *Order Ratifying Approved Investor Claimants List and Authorizing Second Distribution of Receiver Assets* ("**Second Distribution Approval Order**") (ECF No. 196) was entered, a copy of which is attached as **Exhibit A-2** and incorporated herein by reference.

On August 31, 2018, 769 second distribution checks totaling $800,000.00 were mailed to the Approved Investor Claimants by U.S. First Class Mail to their last known addresses. Positive Pay security procedures were, as ordered by the Court, implemented to ensure proper negotiation of each distribution check. Through February 28, 2019, 739 checks had cleared Positive Pay, totaling $786,596.05, and 30 checks remained uncashed, totaling $13,403.98.[3]

Pursuant to the Second Distribution Approval Order (Ex. A-2, ECF No. 196, PageID.3729), second distribution checks which are returned or which have not been cashed within one hundred and twenty (120) calendar days from the date of mailing of such checks shall be void, the right to receive such payments shall terminate, subject only to the Receiver's sole discretion, and the amounts otherwise distributable to such Approved Claimants shall be returned to the Second Distribution Fund and disposed of according to the Court's further instructions.

The Second Distribution Approval Order further directed the Receiver, in his mailing of the second distribution checks, to warn the Approved Claimants of this potential loss of rights and the need to promptly cash their checks, by means of an **Investor Second Distribution Letter** (a copy of which is attached as **Exhibit A-4** and incorporated herein by reference), which the Court approved as to form. The Receiver complied with that directive on August 31, 2018, when copies of the Investor Second Distribution Letters were sent to Approved Claimants by U.S. First Class mail, along with their second distribution checks.

---

[3] All reasonable efforts have been conducted to find current addresses for uncashed investors, including, but not limited to, conducting Accurint-TLO searches on all distribution packages returned as undeliverable or remaining uncashed, attempting to reach investors with no identifiable new addresses by email, and reissuing checks to newly identified addresses.

**STENGER & STENGER**

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 1, 2019
Page 6 of 10

Because of the joint ownership of some claims, the Second Distribution Approval Order (Ex. A-2, ECF No. 196, Page ID.3729-3730) also directed the Receiver, prior to mailing the second distribution checks, to mail to each Co-Investor Claimant a **Letter to Co-Investor Claimant** which the Court approved as to form (a copy of which is attached as **Exhibit A-5**, and incorporated herein by reference), advising Co-Investor Claimants as to which address the checks will be mailed, and, further directed that a copy of the Investor Second Distribution Letter which was to be mailed with the distribution checks (attached Ex. A-3) was also to be mailed to each Co-Investor Claimant so that each will be informed as to when the checks are mailed. In processing the Second Distribution, the Receiver complied with both of those directives.

The Second Distribution Approval Order (Ex. A-2, ECF No. 196, Page ID.3730-3731) also directed the Receiver to follow a Small Estate Affidavit procedure upon notification by representatives and/or family members of deceased claimants that they were unable to cash or negotiate checks made payable to a deceased claimant, or a deceased claimant's estate. No such notifications were received with respect to the second distribution checks.

As of February 28, 2019, a total of 30 Approved Investor Claimants failed to timely cash their second distribution checks, totaling **$13,403.98**. Those uncashed checks are permanently null and void. A list of Approved Investor Claimants with uncashed checks, including the amounts of their uncashed checks, is attached as **Exhibit A-6** and incorporated herein by reference.

While it is possible that the Receiver may recover further restitution payments pursuant to restitution orders entered against various defendants in related criminal actions (i.e., *USA v. Diane Aurelia Bishop*, and *USA v. Jason Michael Meyer*), most restitution payments received to date are relatively small in amount, and it is very unlikely that any restitution checks that may come through hereafter would be of sufficient size to justify any further distributions to investors. If, however, outstanding restitution orders generate sizeable restitution payments to the Receiver before the Receivership estate is closed, we would consider moving for a further distribution before closing the Receivership estate.

**STENGER & STENGER**

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 1, 2019
Page 7 of 10

## QUALIFIED SETTLEMENT FUND TAX RETURNS

No taxes are due and owing from the CFTC v Cash Flow Financial et al Combined Settlement Fund (the "**QSF**").

There are currently four (4) open Form 1120-SF qualified settlement fund tax returns ("**QSF returns**") for calendar years ending December 31, 2015, December 31, 2016, December 31, 2017, and December 31, 2018.

The QSF return for calendar year 2015 was filed with the IRS on March 16, 2016, along with a request for prompt assessment, and a copy of the Receiver's filing letter to the IRS dated March 16, 2016 is attached as **Exhibit A-7** and incorporated herein by reference. The QSF return for calendar year 2016 was filed with the IRS on March 7, 2017, along with a request for prompt assessment, and a copy of the Receiver's filing letter to the IRS dated March 7, 2017 is attached as **Exhibit A-8** and incorporated herein by reference. The QSF return for calendar year 2017 was filed with the IRS on February 14, 2018, along with a request for prompt assessment, and a copy of the Receiver's filing letter to the IRS dated February 14, 2018 is attached as **Exhibit A-9** and incorporated herein by reference. The QSF return for calendar year 2018 was filed with the IRS on March 11, 2019, along with a request for prompt assessment, and a copy of the Receiver's filing letter to the IRS dated March 11, 2019, is attached as **Exhibit A-10** and incorporated herein by reference.

The IRS has advised that heavy workloads are delaying their response to outstanding prompt assessment requests. The statute of limitations applicable to QSF returns is three (3) years. Accordingly, the limitations periods on the estate's outstanding QSF returns for calendar years 2015, 2016, 2017 and 2018 (collectively, the "**Open QSF Returns**") will expire on March 16, 2019; March 30, 2020; February 14, 2021; and March 11, 2022, respectively.

In his contemporaneously filed Receiver's *Motion and Memorandum for Entry of an Order Approving the Receiver's Final Report, Final Accounting and Compensation Request and Closing the Estate* ("**Closing Motion**"), the Receiver

STENGER & STENGER

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 1, 2019
Page 8 of 10

seeks the following: (1) this Court's approval and authority, pending IRS clearance of the Open QSF Returns, to hold back a **Reserve Fund** of approximately $69,675.91, comprised of the residual estate assets after payment of the Receiver's final Compensation Motion No. 24, discussed below, to be held in trust in the CFF Operating Account as a reserve pending IRS clearance of the Open QSF Returns; (2) this Court's approval and authority to file a petition to reopen the estate and seek further compensation out of the Reserve Fund if obtaining IRS tax clearance becomes more complicated than the Receiver anticipates, or other issues arise; (3) this Court's approval and authority to disgorge to the Commission for turnover to the United States Treasury, without necessity of further court orders, the balance of the Reserve Fund remaining after IRS clearance, and any final expenses that may be incurred in obtaining said clearance, in closing down the estate, and responding to other issues, if any, that may arise; and (4) this Court's approval and authority, after entry of the Closing Order, to make any additional filings with the IRS, state or local authorities which are necessary or incident to the closing of the Receivership estate.

## COMPENSATION MOTION NO. 24

Pursuant to the terms of the Statutory Restraining Order appointing the Receiver (ECF No. 5, Paragraph G on Page 12), the Receiver and his Retained Personnel are entitled, subject to approval of the Court, to be reimbursed for expenses incurred and reasonable compensation in amounts commensurate with the services performed pursuant to the Statutory Restraining Order, to be paid from the Receivership estate assets.

A copy of the Receiver's Compensation and Expenses Motion No. 24 (**"Compensation Motion No. 24"**), which is being filed concurrent with this Final Report and the Closing Motion, is attached as **Exhibit A-11** and incorporated herein by reference. Compensation Motion No. 24 seeks approval of the following fees and expenses incurred by the Receiver and his Retained Personnel for the time period of October 1, 2018 through February 28, 2019, totaling $38,344.81 in the aggregate, which fees and expenses are reasonable and commensurate with the services performed: Stenger & Stenger's fees of $22,382.40 and expenses of

STENGER & STENGER

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 1, 2019
Page 9 of 10

$15,962.38 (117.30 hrs).   Those expenses include retained counsel Holland & Knight's fees and expenses of $4,013.96 and $6,150.82, incurred during September 2018 and October 2018, respectively, and retained accountants Plante Moran's professional fees totaling $2,906.00 for tax reporting services performed for the period of January 10, 2019 through February 28, 2019.  Detailed billing statements of the Receiver and his Retained Personnel are attached as Exhibits A, B and C, respectively, to Compensation Motion No. 24.   Copies of this Final Report, Compensation Motion No. 24 and the supporting billing statements have previously been provided to the Commission.

I am requesting that the Court unfreeze and authorize consolidation of the Receivership Estate's bank accounts at Fifth Third Bank and authorize transfer of the current balances in the CFF Distribution Account (Account No. xxxx2638) and CFF Savings Account (Account No. xxxx2620) into the CFF Operating Account (Account No. xxxx2612).

I am requesting that the Court approve Compensation Motion No. 24 and authorize payment of the aggregate sum of $38,344.81 from the CFF Operating Account (Account No. xxxx2612) at Fifth Third Bank.

## CLOSING THE ESTATE

I respectfully request that the Court enter the proposed *Order Approving the Receiver's Final Report, Final Accounting and Compensation Request and Closing the Estate* ("**Proposed Closing Order**"), a copy of which is attached as **Exhibit A-12** and incorporated herein by reference.

\* \* \*

STENGER & STENGER

Hon. Mark A. Goldsmith
*CFTC vs. Watson, et al*
April 1, 2019
Page 10 of 10

I hope this Final Report has been informative. I would be happy to discuss any aspect of this Report with the Court, the Commission or counsel for the parties.

Very truly yours,
STENGER & STENGER, P.C.

*Phillip Stenger*

Phillip S. Stenger
Temporary Receiver

C:   Daniel J. Grimm, Peter A. Caplan, Harry H. Wise, III, Sonya N. Goff, and Erika L. Butler.

Attachments (12):

A-1.   Final Accounting;
A-2.   Second Distribution Motion (without exhibits);
A-3.   Second Distribution Approval Order;
A-4.   Investor Second Distribution Letter;
A-5.   Letter to Co-Investor Claimant;
A-6.   List of Approved Claimants with Uncashed Checks;
A-7.   Letter to IRS Filing 2015 QSF Return dated March 16, 2016;
A-8.   Letter to IRS Filing 2016 QSF Return dated March 7, 2017;
A-9.   Letter to IRS Filing 2017 QSF Return dated February 14, 2018;
A-10. Letter to IRS Filing 2018 QSF Return dated March 11, 2019;
A-11. Compensation Motion No. 24
    Ex. A:   Stenger & Stenger's Invoices
    Ex. B:   Holland & Knight's Invoices
    Ex. C:   Plante Moran's Invoices
    Ex. D:   Affidavit of Phillip S. Stenger
A-12. Proposed Closing Order.

*Commodity Futures Trading Commission v. Watson, et al*
Case No. 11-cv-10949 (E.D. Mich)

## INDEX OF EXHIBITS
### to
### RECEIVER'S FINAL REPORT

A-1.  Final Accounting;

A-2.  Second Distribution Motion (without exhibits);

A-3.  Second Distribution Approval Order;

A-4.  Investor Second Distribution Letter;

A-5.  Letter to Co-Investor Claimant;

A-6.  List of Approved Claimants with Uncashed Checks;

A-7.  Letter to IRS Filing 2015 QSF Return dated March 16, 2016;

A-8.  Letter to IRS Filing 2016 QSF Return dated March 7, 2017;

A-9.  Letter to IRS Filing 2017 QSF Return dated February 14, 2018;

A-10. Letter to IRS Filing 2018 QSF Return dated March 11, 2019;

A-11. Compensation Motion No. 24

      Ex. A:    Stenger & Stenger's Invoices
      Ex. B:    Holland & Knight's Invoices
      Ex. C:    Plante Moran's Invoices
      Ex. D:    Affidavit of Phillip S. Stenger

A-12. Proposed Closing Order.

272387

*CFTC v. Watson, et al.*
Case No. 11-CV-10949

## EXHIBIT A-1
## To
## <u>RECEIVER'S FINAL REPORT</u>

*Final Accounting*

**CFTC v CASH FLOW FINANCIAL**

**SOURCES AND USES OF FUNDS**                                        **AS OF 02/28/19**

**SOURCES OF FUNDS FROM CFF, WATSON AND JEDBURGH**

| | | |
|---|---|---:|
| Jedburgh Group Escrow | $ | 36,863.64 |
| Bank of America #6179 Alan Watson | | 1,042.98 |
| Bank of America #3383 Alan Watson | | 7,670.82 |
| Frinkebeiner Trust Account | | 3,226,233.77 |
| Christian Financial CU 91031 Alan Watson | | 40.01 |
| Christian Financial CU 211456 Alan Watson | | 830.09 |
| Garnishment of Keith Freemans BOA Account | | 4,637.79 |
| Merrill Lynch | | 0.99 |
| **Total Received:** | | 3,277,320.09 |

**OTHER SOURCES OF FUNDS**

| | |
|---|---:|
| Trade Station Securities | 138.90 |
| PFG, Inc | 1,729.00 |
| TD Ameritrade Inc | 2,303.56 |
| Restitution Received | 3,788,304.89 |
| Interest Earned | 39,763.81 |
| Fulton Bank Potts | 156.26 |
| Stenger & Stenger -open account -2620 | 200.00 |
| Trade LLC | 2,009,903.66 |
| **Total Received:** | 5,842,500.08 |

| | |
|---|---:|
| **TOTAL SOURCES OF FUNDS:** | **9,119,820.17** |

**USES OF FUNDS**

| | | |
|---|---|---:|
| Bank Service and Check Charges | | 18,025.67 |
| Professional Fees & Expenses | see Note 1 | 1,599,455.35 |
| Distribution settlement to investors | | 7,269,838.36 |
| Return order-Jeffrey Schneider | | 123,880.07 |
| Tax Penalties | | 600.00 |

| | |
|---|---:|
| **TOTAL USES OF FUNDS** | **9,011,799.45** |
| **NET SOURCES OF FUNDS AS OF 02/28/19:** | **108,020.72** |

| | |
|---|---:|
| Fifth Third Bank - savings money market-2612 | 50,129.90 |
| Fifth Third Bank - checking-2638 | 27,687.63 |
| Fifth Third Bank - checking-2620 | 30,203.19 |
| **BALANCE IN CFF BANK ACCOUNTS ON 02/28/19** | **108,020.72** |

**Note 1:  Professional Fees & Expenses Paid Through 02/28/19:**

| | |
|---|---:|
| Stenger & Stenger | 1,289,999.29 |
| Plante Moran | 47,353.32 |
| Harry Wise, III | 146,140.58 |
| Cotton Bledsoe | 72,860.46 |
| Edward Mitchell | 11,456.33 |
| Alice Romsek, expert witness | 1,500.00 |
| Holland & Knight | 30,145.37 |
| | **1,599,455.35** |

*CFTC v. Watson, et al.*
Case No. 11-CV-10949

**EXHIBIT A-2**
**To**
**RECEIVER'S FINAL REPORT**

*Second Distribution Motion (without exhibits)*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

COMMODITY FUTURES TRADING   )
COMMISSION,   )
         Plaintiff,   )
   )
   )
ALAN JAMES WATSON,   )   Case No. 11-cv-10949
MICHAEL POTTS, and   )   HON. MARK A. GOLDSMITH
CASH FLOW FINANCIAL, LLC,   )
   )
        Defendants,   )
and   )
   )
THE JEDBURGH GROUP,   )
   )
       Relief Defendant.   )
   )

## MOTION AND MEMORANDUM FOR
## SECOND DISTRIBUTION OF RECEIVERSHIP ASSETS

**LOCAL RULE CERTIFICATION:** Pursuant to Local Rule 7.1(a), the undersigned counsel certifies that on May 24, 2018, counsel communicated in writing with counsel for all parties and with pro se defendants Alan Watson and Michael Potts, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief. Counsel for Plaintiff, Commodity Futures Trading Commission, responded that the Commission will not take any position on the motion, and Counsel for The Jedburgh Group and Elizabeth Grill concurred in the relief sought in writing. More than three weeks have passed without remaining counsel or pro se defendants expressly agreeing to the relief, orally or in writing.

**LOCAL RULE CERTIFICATION:** I, Kay Griffith Hammond, certify that this document complies with Local Rule 5.1(a), including double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Phillip S. Stenger, Temporary Receiver for Cash Flow Financial, LLC ("**CFF**"), by and through his attorneys, STENGER & STENGER, P.C., submits this *Motion and Memorandum for Second Distribution of Receivership Assets* ("**Second Distribution Motion**"), and moves this Court for authority to distribute USD **$800,000.00** (the "**Second Distribution Fund**") to investors whose claims have been approved ("**Approved Claimants**")[1,2] and hold back approximately USD **$210,342.37** to apply to costs of winding up the Estate, all as detailed below.

## INTRODUCTION

The Adjusted Net Investor Claims ("**ANICs**") in this Receivership total USD **$32,001,411.42**.  To date, an aggregate USD **$6,483,242.31** in Receivership assets has been distributed to Approved Claimants, as discussed in more detail below. The Receiver seeks authority to make a second (and likely final) distribution of USD **$800,000.00**, which, if approved, will result in total distributions of USD **$7,283,242.31**, representing a return by the Receivership of

---

[1] Except as set forth herein, all capitalized terms not defined herein shall have the definitions set forth in the **Claims Procedure Motion** (Dkt. No. 78); the **Claims Procedure Adoption Order** (Dkt. No. 98), and the **Investor Claims Procedure** attached to that Order (Dkt. No. 98-3); the Receiver's initial **Distribution Motion** and **Distribution Memorandum** (Dkt. Nos. 160-161); and the **First Distribution Order** (Dkt. No. 166).

[2] To protect the privacy of CFF investors, their names have not been disclosed; rather, all investor claims are identified by File ID numbers only.  Upon request by

more than 22% of each Approved Claimant's Adjusted Net Investor Claim ("**ANIC**").

## BACKGROUND

1.    The procedural history of this matter, which is well known to this Court, was fully detailed in the initial Distribution Memorandum (Dkt. No. 161, Pages 2-10, Page ID 3125-3133), and will thus not be repeated here.

2.    As of April 30, 2018, the gross assets held by the Receivership Estate total USD **$1,010,342.37** in cash. See **Sources and Uses of Funds Report as of April 30, 2018**, a copy of which is attached as **Exhibit A** hereto and is incorporated herein by reference. [Of that cash total, USD $16,757.69 is attributable to uncashed checks from the initial distribution in 2016, as discussed below.] The Receiver estimates that "**Windup Costs**" will total approximately USD **$210,342.37** (comprised of USD **$56,655.27** in professional fees outstanding as of March 31, 2018; and **USD $153,687.10** to cover the estimated aggregate costs of processing the Second Distribution, preparation and filing of a closing motion, final accounting, final report and final compensation motion, preparation and filing of final tax returns, and document destruction costs), as discussed in more detail below. Accordingly, the Receiver seeks the Court's authorization to (i) distribute the Second Distribution Fund of USD **$800,000.00** to Approved

the Court, the Receiver will provide a confidential key register, to be filed under

Claimants; and (ii) hold back the approximate sum of USD **$210,342.37** to apply to the Windup Costs.

## **FIRST DISTRIBUTION**

3.      On January 4, 2016, this Court entered its First Distribution Order (Dkt. No. 166) approving and authorizing distribution of an initial distribution fund of US **$6,500,000** (the **"First Distribution Fund"**) from the Receivership assets to the Approved Claimants in the ratio of their Adjusted Net Investor Claims (**"ANIC"**), as listed on the Approved Claimants List (Exhibit B to the Distribution Memorandum, Dkt. No. 161-3, Page ID 3180).

4.      Pursuant to the terms of the First Distribution Order (Dkt. No. 166, Para. 16, Page ID 3292), the Receiver posted a copy of the Distribution Motion and Memorandum, including all Exhibits, and a copy of the First Distribution Order on the Receiver's website at www.cffreceiver.com.

5.      After entry of the First Distribution Order, the Receiver made the required distributions from the First Distribution Fund to each Approved Claimant on February 8, 2016, by *United States First Class Mail*, to the last known address of each Approved Claimant contained in the Receiver's records, and the Positive Pay security procedures pertaining to presentment of those checks for cashing were implemented.

seal, listing investor names with their corresponding File ID numbers.

6.     Of the 776 distribution checks mailed, totaling USD $6,500,000, a total of 769 checks were cashed (inclusive of two checks reissued pursuant to Small Estate Affidavits), totaling USD **$6,483,242.31**, while seven (7) checks, totaling USD **$16,757.69**, were uncashed. A list of the **Uncashed First Distribution Checks** is attached hereto as **Exhibit B**, and incorporated herein by reference.

7.     Under the terms of the First Distribution Order (Dkt. No. 166, Para. 7, Page ID 3287), distribution checks which were returned or which had not been cashed within one hundred and twenty (120) calendar days from the date of mailing of such checks, are permanently void, the right to receive such payments has terminated, subject only to the Receiver's sole discretion, and the amounts otherwise distributable to such Approved Claimants have been returned to the Distribution Fund to be disposed of according to the Court's further instructions; further, such Approved Claimants shall have no right to participate in future distributions, if any, shall be removed from the Approved Claimants list, and the Receiver shall have no further duty to locate these Approved Claimants or notify them of future hearings, motions, orders or developments in the case.

8.     In mailing the checks, the Receiver warned Approved Claimants of this potential loss of rights and the need to promptly cash their checks by including copies of an Investor Distribution Letter, substantially in the form attached as

Exhibit F to the Distribution Memorandum (Dkt. No. 161-7, Page ID 3228), which the Court approved.

9.      Due to joint ownership of some claims, the Receiver, prior to mailing the distribution checks, mailed via *United States First Class Mail* to each Co-Investor Claimant a Letter to Co-Investor Claimant, substantially in the form attached as Exhibit G to the Distribution Memorandum (Dkt. No. 161-8, Page ID 3231), which the Court approved, advising them as to which address the checks would be mailed, and further, a copy of the Investor Distribution Letter attached as Exhibit F to the Distribution Memorandum (Dkt. No. 161-7, Page ID 3228), mailed with the distribution checks, was also mailed to each Co-Investor Claimant so that each was informed as to when the checks are mailed.[3]

10.     If a distribution check made payable to a deceased claimant, or a deceased claimant's estate, had not been cashed or negotiated, and the representatives and/or family members of such deceased claimant informed the Receiver that they were unable to cash or negotiate the check, the Distribution Approval Order (Dkt. No. 166, Para. 9-12, Page ID 3288-3290) authorized the

---

[3] Provided, however, that failure of the Receiver to mail the Letter to Co-Investor Claimants or the Investor Distribution Letter to Co-Investor Claimants shall not give rise to any claim against the Receiver (individually or in his representative capacity), or his employees, agents, attorneys and accountants, or the Receivership estate, as these letters are meant to provide courtesy notices and do not convey substantive rights to Approved Claimants or Co-Investor Claimants. [Distribution Approval Order, Dkt. 166, Para. 8, Page ID 3288.]

Receiver to receive and review Small Estate Affidavits, or other such similar small estate probate documents as authorized by state law, as provided to the Receiver by representatives of the deceased claimant's estate, in order to determine whether such documentation was sufficient to satisfy the decedent's state requirements for reissuing the decedent's distribution check to the identified Affiant (designated surviving spouse, child or other heir as identified in the Small Estate Affidavit), without further probate or other court involvement; and in order to determine whether such documentation was sufficient for the Receiver to send future court-approved distribution amounts (if any) to the identified Affiant, without further probate court involvement.

11.   The Receiver approved two requests for reissuance of decedents' distribution checks, mailed the reissued checks to the Affiants as authorized, implemented the Positive Pay security procedures concerning presentment of those checks for cashing, and all such reissued checks were timely negotiated.

12.   In order to effectuate the First Distribution (and any subsequent distribution) to Approved Claimants, and, where applicable, to effectuate processing and distribution of reissued estate checks to Affiants in reliance on Small Estate Affidavits, the Court's First Distribution Order (Dkt. No. 166, Para. 13, Page ID 3290-3291) released and discharged the Receiver (individually and in his representative capacity), and his employees, agents, attorneys and accountants,

and all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing and distribution of checks and determination of claims filed pursuant to the Investor Claims Procedure, or involved in the review, verification, calculation, tabulation, or any other aspect of the processing and reissuance of estate checks to any Affiants based on their reliance on the Small Estate affidavits, or otherwise involved in the estate's administration, from any act or omission arising out of such involvement.

13. The Court's First Distribution Order (Dkt. No. 166, Para. 14, Page ID 3291-3292) further provided that the CFF Receivership Estate shall indemnify, defend and hold harmless the Receiver (individually and in his representative capacity), and his employees, agents, attorneys and accountants, and all persons involved in the review, verification, calculation, tabulation, or any other aspect of processing and distribution of checks and determination of claims filed pursuant to the Investor Claims Procedure, or involved in the review, verification, calculation, tabulation, or any other aspect of processing and reissuance of Estate checks to any Affiants based on their reliance on the Small Estate Affidavits, or otherwise involved in the Estate's administration (collectively, the **"Indemnified Parties"**), from and against all actions pending or threatened, whether at law or in equity, in any forum, from liabilities, damages, losses, costs and expenses, including but not

limited to, reasonable attorneys' and other professionals' fees and costs, arising from conduct or omission of the Indemnified Parties in connection with this case.

### ADMINISTRATIVE MATTERS

14. **Uncashed First Distribution Checks**: As reflected on the list of **Uncashed First Distribution Checks**, attached as **Exhibit B**, and incorporated herein by reference, a total of seven (7) Approved Claimants failed to cash their initial distribution checks, totaling USD **$16,757.69**. The Receiver and his staff made their best efforts to locate those who failed to cash their checks and issue new checks to them at their present location.[4] Pursuant to the First Distribution Order (Dkt. No. 166, Para. 7, Page ID 3287), the US $16,757.69 otherwise distributable to such Approved Claimants shall be returned to the Distribution Fund and disposed of according to the Court's further instructions.

15. **Reconciliation of Approved Claimants List**: Under the terms of the First Distribution Order (Dkt. No. 166, Para. 12, Page ID 3290), the uncashed Approved Claimants "shall be removed from the Approved Claimants list, and the Receiver shall have no further duty to locate these Approved Claimants or notify

---

[4] Those efforts included research through Accurint, TLO and various other databases of addresses and contact information to attempt to locate current contact information for any investors who have previously failed to cash their checks. Letters were then sent to each investor for whom new potential contact information was discovered in an attempt to verify said contact information. If and when current contact information could be verified, checks were reissued to the current addresses.

them of future hearings, motion, orders or developments in this case." Pursuant to those directives, the Receiver has stricken the uncashed Approved Claimants from the Approved Claimants List, and their shares of the initial distribution have been returned to the Receivership Estate for distribution to other Approved Claimants in the Second Distribution or as the Court may otherwise direct. The Receiver seeks the Court's ratification of the foregoing actions and of the **Reconciled Approved Claimants List** (which is a list of Investors who are eligible to participate in this Second Distribution), a copy of which is attached as **Exhibit C** and incorporated herein by reference. The Reconciled Approved Claimants List also reflects (in Column C on attached **Exhibit C**) the recalculated Adjusted Net Principal Claim for each Approved Claimant after the distributive shares of those purged were returned to the Receivership Estate for distribution to other Approved Claimants in the Second Distribution or as the Court may otherwise direct. The Receiver seeks ratification of the determinations of Adjusted Net Principal Claim for each Approved Claimant set forth in Column C on **Exhibit C.**

16. **Trade Creditor Claims**: The Investor Claims Procedure approved by the Court (Dkt. No. 98-3, Page ID 1978) did not address the claims of creditors who provided goods or services to CFF prior to commencement of the Receivership. For the reasons stated below, the Receiver believes that under the

circumstances of this case, establishment of a separate trade creditor claims procedure would not be fair and equitable, or in the best interests of the victims of the CFF Ponzi scheme.

17.     In receivership proceedings, the District Court, sitting in equity, has "the authority to approve any plan provided it is 'fair and reasonable.'" *S.E.C. v. Byers*, 637 F. Supp. 2d 166, 174-75 (S.D.N.Y. 2009) (quoting *S.E.C. v. Wang*, 944 F.2d 80, 81 (2d Cir. 1991)). This discretion derives from the inherent powers of an equity court to fashion relief, *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992). The District Court's "'broad powers and wide discretion' extend to allocating the priority of distributions from the receivership estate." *Quilling v. Trade Partners, Inc.*, 2007 WL 107669, at *3 (W.D.Mich. Jan. 9, 2007) (quoting *In re Indian Motorcycle* Litigation, 307 B.R. 7, 16 (D.Mass.Bankr. 2004)).

18.     Differing treatment may be sought for distributions to investors in contrast to trade creditors. *See, e.g., Norwest Bank Wisconsin, N.A. v. Malachi Corp.*, 245 Fed. App'x 488, 495 (6th Cir. 2007). For example, the court in *CFTC v. Capitalstreet Financial, LLC*, 2010 WL 2572349 (W.D.N.C., June 18, 2010) ("*Capitalstreet*"), approved a higher priority for defrauded investors as compared to non-investor general creditors, stating:

The Receivership Estate shall be distributed in the following order:

A. To claims for expenses of the administration of the Receivership Estate, including legal and accounting fees; expenses to preserve the value of assets;

and costs of realization and payment of any taxes due on property or income of property of the Receivership Estate incurred during the pendency of the receivership (the "Administrative Claimants");

B.   To the return of investments to Investors; and

C.   To any General Creditors, *should any assets remain in the Receivership Estate.* [Emphasis added].[5]

19.    There are insufficient assets in the CFF Receivership Estate to repay the defrauded CFF Ponzi scheme victims, who, inclusive of the proposed Second Distribution, will have received distributions totaling approximately 22% of the amount of their allowed claims.   See *Affidavit of the Receiver*, a copy of which is attached as **Exhibit D** and incorporated herein by reference. The Receiver therefore believes that establishment of a trade creditor claims procedure in such

---

[5] *Capitalstreet*, 2010 WL 2572349, at *2 (W.D.N.C. June 18, 2010); *see also S.E.C. v. HKW Trading LLC*, No. 8:05-cv-1076-T-24-TBM, 2009 WL 2499146, at *2 (M.D. Fla. Aug. 14, 2009).  The claims processing procedure approved by the *Capitalstreet* court specifically provided that general creditors "shall not" submit claims to the receiver:

> 2.A.    *Because the Receiver does not anticipate that the assets in the Receivership Estate are sufficient to repay the Investors, General Creditors shall not submit claims to the Receiver.* [Emphasis added]. However, if it should appear to the Court that assets will remain in the Receivership Estate after distributions have been made to the Investors, the General Creditors shall be permitted to submit claims to the Receiver by further Order of the Court.

*Capitalstreet, supra*, 2010 WL 2572349, at *2.

circumstances would not be fair and equitable, or in the best interests of the victims of the CFF Ponzi scheme.

Accordingly, the Receiver asks the Court to find under the circumstances that (i) no trade creditor claims procedure shall be established in this case; and (ii) that general trade creditors who previously submitted claims to the Receiver shall recover nothing on those claims.

## SECOND (AND LIKELY FINAL) DISTRIBUTION OF RECEIVERSHIP ASSETS

For the reasons detailed above, the Receiver respectfully requests that this Court enter a Second Distribution Approval Order:

A.     Ratifying the proposed "**Reconciled Approved Claimants List**" attached as **Exhibit C** and incorporated herein by reference, and the actions of the Receiver in compiling the Reconciled Approved Claimants List;

B.     Authorizing the Receiver to distribute the sum of Eight Hundred Thousand Dollars (**USD $800,000**) (the "**Second Distribution Fund**") from the Receivership Estate to the Reconciled Approved Claimants listed on Exhibit C in the ratio of their "**Adjusted Net Investor Claim**" ("**ANIC**"); [6]

---

[6] On January 4, 2016, the Court entered its First Distribution Order (Dkt. No. 166), holding that the procedures used by the Receiver in calculating ANICs, including

C.    Authorizing the Receiver to transfer sufficient funds from CFF's Operating Account xxxx2620 at Fifth Third Bank, and/or from CFF's Savings Account xxxx2612 at Fifth Third Bank, into CFF's Distribution Account xxxx2638 at Fifth Third Bank, as necessary to bring the total in Distribution Account xxxx2638 to USD $800,000 for distribution to the Approved Claimants in accordance with the ANICs set forth in Exhibit C;

D.    Holding that the determinations of adjusted ANIC and Second Distribution Share for each Approved Claimant listed on Exhibit C constitute final and binding determinations of ANIC and Second Distribution Share for each Approved Claimant, and that the Approved Claimants, and each of them individually, are barred from asserting any claim against the Receiver (either personally or in his representative capacity) or his employees, agents, attorneys or accountants, or the Receivership Estate, in excess thereof;

---

but not limited to combining the claims of Co-Investor Claimants who purchased investments jointly, and the netting of positive and negative claims of Investor Claimants, were fair and equitable; that the claims administration process conducted by the Receiver complied with all requirements of the Claims Procedure Adoption Order and the Investor Claims Procedure; and that the procedures used by the Receiver to provide notice to Investor Claimants of their ANICs, including posting on the Receiver's CFF Website and publication in *USA Today*, were fair and equitable and provided adequate due process to Investor Claimants. (Dkt. 166, Para. 4, Page ID 3286).

E. Holding that all claims from individuals and/or entities not specifically listed as Reconciled Approved Claimants on Exhibit C, as well as all claims of those Investor Claimants or potential Investor Claimants whose claims have been rejected or determined to be zero since they failed to cash their First Distribution checks, as listed on the **"Denied Claimants List,"** a copy of which is attached as **Exhibit E** and incorporated herein by reference, are hereby forever barred and may not be asserted against the Receiver (either personally or in his representative capacity), or his employees, agents, attorneys and accountants, or the Receivership Estate;

F. Ordering that the Receiver shall distribute the Second Distribution Amount to the Approved Claimants as provided on the Reconciled Approved Claimants List (Exhibit C) after entry of the Second Distribution Approval Order; and further that (i) the distribution shall be mailed by *United States First Class Mail* to the last known address of each Approved Claimant contained in the Receiver's records; (ii) the burden is on the Approved Claimant to notify the Receiver of the Approved Claimant's current address and other contact information, and to insure that the Approved Claimant's name and/or proper contact information are contained in the Receiver's records; (iii) the Receiver is under no duty or obligation to attempt to determine any Approved Claimant's current address

15

and other contact information; and (iv) the Receiver shall implement the Positive Pay security procedures to ensure the proper negotiation of each distribution check;

G.    Ordering that second distribution checks which are returned or which have not been cashed within one hundred and twenty (120) calendar days from the date of mailing of such checks will be void and the right to receive such payments will terminate, subject only to the sole discretion of the Receiver, and the amounts otherwise distributable to such Approved Claimants shall be returned to the Second Distribution Fund and disposed of according to the Court's further instructions; and, further, the Receiver shall, in the mailing of the second distribution checks, warn Approved Claimants of this potential loss of rights and the need to promptly cash their checks by including copies of an **"Investor Second Distribution Letter"** substantially in the form attached as **Exhibit F,** which is incorporated herein by reference, which the Court hereby approves; and, further, such Approved Claimants shall have no right to participate in future distributions, if any, shall be removed from the list of Approved Claimants, and the Receiver shall have no further duty to locate these Approved Claimants or notify them of future hearings, motions, orders or developments in the case;

H.    Ordering that, because of the joint ownership of claims, the Receiver, prior to mailing the second distribution checks, will mail via *United States First Class Mail* to each Co-Investor Claimant a "**Letter to Co-Investor Claimants**," substantially in the form attached as **Exhibit G**, which is incorporated herein by reference, which the Court hereby approves, advising them as to which address the checks will be mailed, and further ordering that a copy of the Investor Second Distribution Letter (Exhibit F), which is to be mailed with the second distribution checks, will also be mailed to each Co-Investor Claimant so that each Co-Investor Claimant will be informed as to when the checks are mailed; provided, however, that failure of the Receiver to mail the Letter to Co-Investor Claimants or the Investor Second Distribution Letter to Co-Investor Claimants shall not give rise to any claim against the Receiver (individually or in his representative capacity), or his employees, agents, attorneys and accountants, or the Receivership Estate, as these letters are meant to provide courtesy notices and do not convey substantive rights to Approved Claimants or Co-Investor Claimants;

I.    Ordering that if a second distribution check was made payable to a deceased claimant, or a deceased claimant's estate, and the representatives and/or family members of such deceased claimant inform the

17

Receiver that they are unable to cash or negotiate the check, the Receiver is authorized to receive and review Small Estate Affidavits, or other such similar small estate probate documents as authorized by state law, as provided to the Receiver by representatives of the deceased claimant's estate, to: (i) determine whether such documentation is sufficient to satisfy the decedent's state requirements for reissuing the decedent's second distribution check to the Affiant (the designated surviving spouse, child or other heir as identified in the Small Estate Affidavit), without further probate or other court involvement; and (ii) determine whether such documentation is sufficient for the Receiver to send future court-approved distribution amounts (if any) to the identified Affiant, without further probate or other court involvement;

J.      Ordering that if the Receiver determines that the documentation is sufficient, as detailed above, the Receiver is authorized to reissue the decedent's second distribution check in the name of the Affiant, and mail the reissued second distribution check to the Affiant via *United States First Class Mail* at the address provided by the Affiant, and further that:  (i) the burden is on the Affiant to notify the Receiver of any updated contact information, and to insure that the Affiant's name and proper contact information are contained in the Receiver's records; (ii) the Receiver is

under no duty or obligation to attempt to determine the current address and/or other contact information for any Affiant; and (iii) the Receiver shall implement the security procedures of Positive Pay;

K.    Ordering that the Receiver shall only reissue a second distribution check if, in addition to the requirements described above, the second distribution check was made payable to a deceased claimant or a deceased claimant's estate, and the second distribution check has not been cashed or negotiated;

L.    Ordering that reissued second distribution checks made payable to the Affiants which are returned or which have not been cashed within sixty (60) days of mailing, will be void, the right to receive such payments will terminate, subject only to the sole discretion of the Receiver, and the amounts otherwise distributable to such Affiants shall be returned to the Second Distribution Fund and disposed of according to the Court's further instructions; and that in the mailing of reissued second distribution checks to Affiants, the Receiver shall warn Affiants of this potential loss of right and the need to promptly cash or negotiate their checks; and further that if Affiants fail to cash the reissued second distribution checks within sixty (60) days of mailing, such Affiants shall have no right to participate in future distributions (if any) and shall be removed from the Receiver's list of

19

Approved Claimants, and the Receiver shall have no further duty to notify such Affiants of future hearings, motions, orders or developments in this case;

     M.    Ordering that, in order to effectuate this distribution, and subsequent distributions (if any), to the Approved Claimants, and, where applicable, to effectuate the processing and distribution of reissued decedents or decedents estate checks to Affiants in reliance on Small Estate Affidavits, as detailed in Paragraphs I through L above, the Court releases and discharges the Receiver (individually and in his representative capacity), and his employees, agents, attorneys and accountants, and all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing and distribution of checks and determination of claims filed pursuant to the Investor Claims Procedure, or involved in the review, verification, calculation, tabulation, or any other aspect of the processing and reissuance of estate checks to any Affiants based on their reliance on the Small Estate Affidavits, or otherwise involved in the administration of the estate, from any act or omission arising out of such involvement;

     N.    Ordering that the Receivership Estate shall indemnify, defend and hold harmless the Receiver (individually and in his representative

20

capacity), and his employees, agents, attorneys and accountants, and all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing and distribution of checks and determination of claims filed pursuant to the Investor Claims Procedure, or involved in the review, verification, calculation, tabulation, or any other aspect of the processing and reissuance of estate checks to any Affiants based on their reliance on the Small Estate Affidavits, or otherwise involved in the administration of the estate (collectively, the **"Indemnified Parties"**), from and against all actions pending or threatened, whether at law or in equity, in any forum, from liabilities, damages, losses, costs and expenses, including but not limited to, reasonable attorneys' and other professionals' fees and costs, arising from conduct or omission of the Indemnified Parties in connection with this case;

O.   Ordering that the Second Distribution Motion and subsequent Order, including all Exhibits, shall be available to the public at the Clerk of the Court for the United States District Court, Eastern District of Michigan (Southern Division) for inspection and copying at such Clerk's office during normal business hours by any interested party who wishes to examine the same; provided that the Court Clerk shall provide a copy of this Second Distribution Motion and subsequent Order to any person requesting same at

21

such person's cost, subject to such Court Clerk's normal practices, procedures and requirements concerning same;

  P. Ordering that the Receiver is further directed to post a copy of this Second Distribution Motion and subsequent Order, with all Exhibits attached, on the Receiver's website at www.cffreceiver.com; and

  Q. Ordering that following the Second Distribution, and completion of all remaining matters necessary to wind up the Receivership, the Receiver is directed to file a final report, final accounting and final application for compensation and expenses.

     Respectfully submitted,

     **STENGER & STENGER, P.C.**
     Attorneys for the Receiver

Dated: June 14, 2018.    /s/ Kay Griffith Hammond
         Kay Griffith Hammond (P37425)
         Business Address:
          2618 East Paris Ave, S.E.
          Grand Rapids, MI 49546
          Telephone: (616) 988-2230
          Facsimile: (616) 940-1192
          Email: kay@stengerlaw.com

# CERTIFICATE OF SERVICE

Kay Griffith Hammond, an attorney, hereby certifies that on June 14, 2018, she caused to be served a copy of the foregoing *Motion for Order Ratifying Approved Claimants List and Authorizing Second Distribution of Receivership Assets* via electronic filing on the following ECF parties:

Jason A. Mahoney
U.S. Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, N.W.
Washington, D.C. 20581
jmahoney@cftc.gov

Daniel J. Grimm
U.S. Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, N.W.
Washington, D.C. 20581
dgrimm@cftc.gov

Peter A. Caplan
United States Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3211
peter.caplan@usdoj.gov

Harry H. Wise, III
Attorney for The Jedburgh Group
250 West 57th Street, Suite 1316
New York, NY 10107
hwiselaw@aol.com

Sonya N. Goff
Stevenson & Bullock PLC
29200 Southfield Rd., Ste. 210
Southfield, MI 48076
sgoll@sbplclaw.com

Erika Lorraine Davis
Butler Davis, PLLC
P.O. Box 2411
Detroit, MI 48202-9998
erika@butlerdavispllc.com

and caused to be served a copy of said *Motion* by First Class Mail on the following
non-ECF parties:

Alan J. Watson
Inmate ID #79104-083
FCI Ashland
P.O. Box 6001
Ashland, KY 41105
Newemail4aj@gmail.com

Michael S. Potts
Pro Se Defendant
590 Centerville Road
Unit 311
Lancaster, PA 17601
mspotts1@gmail.com

**STENGER & STENGER, P.C.**
Attorneys for the Receiver

/s/ Kay Griffith Hammond
Kay Griffith Hammond (P37425)
Business Address:
    2618 East Paris Ave, S.E.
    Grand Rapids, MI 49546
    Telephone: (616) 940-1190
    Facsimile: (616) 940-1192
    Email: kay@stengerlaw.com

*CFTC v. Watson, et al.*
Case No. 11-CV-10949

# EXHIBIT A-3
## To
## <u>RECEIVER'S FINAL REPORT</u>

*Second Distribution Approval Order*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. 11-cv-10949 |
| v. | ) Hon. Mark A. Goldsmith |
| | ) |
| ALAN JAMES WATSON, MICHAEL POTTS, and CASH FLOW FINANCIAL, LLC, | ) |
| | ) |
| Defendants, | ) |
| And | ) |
| | ) |
| THE JEDBURGH GROUP, | ) |
| | ) |
| Relief Defendant. | ) |

## ORDER RATIFYING APPROVED INVESTOR CLAIMANTS LIST AND AUTHORIZING SECOND DISTRIBUTION OF RECEIVERSHIP ASSETS

Phillip S. Stenger, in his capacity as Receiver, having filed his *Motion and Memorandum for Order Ratifying Approved Investor Claimants List and Authorizing Distribution of Receivership Assets* ("**Second Distribution Motion**") (Dkt. No. 195),[1] moving this Court to approve a second distribution, and this Court having held a hearing thereon, and the Court being otherwise fully advised in the premises,

**IT IS ORDERED AND ADJUDGED** as follows:

271358

1.      The Reconciled Approved Claimants List, attached as Exhibit C to the Second Distribution Motion, and the actions of the Receiver in compiling the Reconciled Approved Claimants List, are ratified, and the determinations of Adjusted Net Investor Claim ("**ANIC**") and distribution amount for each Approved Claimant listed on Ex. C constitute final and binding determinations of ANIC and distribution amount for each Approved Claimant, and the Approved Claimants, and each of them individually, are barred from asserting any claim against the Receiver (either personally or in his representative capacity) or his employees, agents, attorneys or accountants, or the Receivership estate, in excess thereof;

2.      The Receiver is authorized to distribute a Second Distribution Fund in the amount of Eight Hundred Thousand Dollars (**USD $800,000.00**) from the Receivership estate to the Approved Claimants listed on Ex. C in the ratio of their ANICs as listed on Ex. C;

3.      The Receiver is authorized to transfer sufficient funds from CFF's Operating Account xxxx2620 at Fifth Third Bank, and/or from CFF's Savings Account xxxx2612 at Fifth Third Bank, into CFF's Distribution Account xxxx2638 at Fifth Third Bank, as necessary to bring the total in Distribution Account

---

[1] All capitalized terms shall have the definitions set forth in the Second Distribution Motion.

xxxx2638 to USD $800,000.00 for distribution to the Approved Claimants in accordance with the ANICs set forth in Exhibit C;

4.     All claims from individuals and/or entities not specifically listed as Approved Claimants on Ex. C, and all claims of the Denied Claimants listed on E to the Second Distribution Motion, are hereby forever barred and may not be asserted against the Receiver (either personally or in his representative capacity), or his employees, agents, attorneys and accountants, or the Receivership estate;

6.     After entry of this Order ("**Second Distribution Order**"), the Receiver shall make the required distributions from the Second Distribution Fund to each Approved Claimant listed on Ex. C of their Second Distribution Amount (as set forth in Column E of Ex. C); and further, (i) the distribution shall be mailed by *United States First Class Mail* to the last known address of each Approved Claimant contained in the Receiver's records; (ii) the burden is on the Approved Claimant to notify the Receiver of the Approved Claimant's current address and other contact information, and to insure that the Approved Claimant's name and/or proper contact information are contained in the Receiver's records; (iii) the Receiver is under no duty or obligation to attempt to determine any Approved Claimant's current address and other contact information; and (iv) the Receiver shall implement the Positive Pay security procedures to ensure the proper negotiation of each distribution check;

3

7.     Second Distribution checks which are returned or which have not been cashed within one hundred and twenty (120) calendar days from the date of mailing of such checks shall be void, the right to receive such payments shall terminate, subject only to the Receiver's sole discretion, and the amounts otherwise distributable to such Approved Claimants shall be returned to the Distribution Fund and disposed of according to the Court's further instructions; further, the Receiver shall, in the mailing of the checks, warn Approved Claimants of this potential loss of rights and the need to promptly cash their checks by including copies of an Investor Second Distribution Letter substantially in the form attached as Exhibit F to the Second Distribution Motion, which the Court hereby approves; and, further, such Approved Claimants shall have no right to participate in future distributions, if any, shall be removed from the Approved Claimants list, and the Receiver shall have no further duty to locate these Approved Claimants or notify them of future hearings, motions, orders or developments in the case;

8.     Because of the joint ownership of some claims, the Receiver, prior to mailing the Second Distribution checks, will mail via *United States First Class Mail* to each Co-Investor Claimant a Letter to Co-Investor Claimant, substantially in the form attached as Exhibit G to the Second Distribution Motion, which the Court hereby approves, advising them as to which address the checks will be mailed, and further, a copy of the Investor Second Distribution Letter (Ex. F)

4

which is to be mailed with the distribution checks, will also be mailed to each Co-Investor Claimant so that each will be informed as to when the checks are mailed; provided, however, that failure of the Receiver to mail the Letter to Co-Investor Claimants or the Investor Second Distribution Letter to Co-Investor Claimants shall not give rise to any claim against the Receiver (individually or in his representative capacity), or his employees, agents, attorneys and accountants, or the Receivership estate, as these letters are meant to provide courtesy notices and do not convey substantive rights to Approved Claimants or Co-Investor Claimants;

9.    If a Second Distribution check was made payable to a deceased claimant, or a deceased claimant's estate, and the representatives and/or family members of such deceased claimant inform the Receiver that they are unable to cash or negotiate the check, the Receiver is authorized to receive and review Small Estate Affidavits, or other such similar small estate probate documents as authorized by state law, as provided to the Receiver by representatives of the deceased claimant's estate, in order to: (i) determine whether such documentation is sufficient to satisfy the decedent's state requirements for reissuing the decedent's Second Distribution check to the Affiant (the designated surviving spouse, child or other heir as identified in the Small Estate Affidavit), without further probate or other court involvement; and (ii) determine whether such documentation is

sufficient for the Receiver to send future court-approved distribution amounts (if any) to the identified Affiant, without further probate or other court involvement;

10.    If the Receiver determines that the documentation is sufficient, the Receiver is authorized to reissue the decedent's Second Distribution check in the name of the Affiant and mail the reissued distribution check to the Affiant via *United States First Class Mail* at the address provided by the Affiant, and (i) the Affiant has the burden to notify the Receiver of any updated contact information, and to insure that the Affiant's name and proper contact information are contained in the Receiver's records; (ii) the Receiver is under no duty or obligation to attempt to determine the current address and/or other contact information for any Affiant; and (iii) the Receiver shall implement the security procedures of Positive Pay;

11.    The Receiver shall only reissue a Second Distribution check if, in addition to the requirements described above, the distribution check was made payable to a deceased claimant or a deceased claimant's estate, and the distribution check has not been cashed or negotiated;

12.    Reissued Second Distribution checks made payable to Affiants which are returned or which have not been cashed within sixty (60) days of mailing, shall be void, the right to receive such payments shall terminate, subject only to the sole discretion of the Receiver, and the amounts otherwise distributable to such Affiants shall be returned to the Distribution Fund and disposed of according to the Court's

further instructions; further, in the mailing of reissued Second Distribution checks to Affiants, the Receiver shall warn Affiants of this potential loss of rights and the need to promptly cash or negotiate their checks; if Affiants fail to cash the reissued distribution checks within sixty (60) days of mailing, such Affiants shall have no right to participate in future distributions (if any) and shall be removed from the Approved Claimants list, and the Receiver shall have no further duty to notify such Affiants of future hearings, motions, orders or developments in this case;

13.    In order to effectuate this Second Distribution, and subsequent distributions (if any), to the Approved Claimants, and, where applicable, to effectuate processing and distribution of reissued estate checks to Affiants in reliance on Small Estate Affidavits, as detailed in Paragraphs 9 through 12 above, the Court hereby releases and discharges the Receiver (individually and in his representative capacity), and his employees, agents, attorneys and accountants, and all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing and distribution of checks and determination of claims filed pursuant to the Investor Claims Procedure, or involved in the review, verification, calculation, tabulation, or any other aspect of the processing and reissuance of estate checks to any Affiants based on their reliance on the Small Estate Affidavits, or otherwise involved in the estate's administration, from any act or omission arising out of such involvement;

14. There being insufficient CFF Receivership estate assets to fully repay the Approved Claimants' Adjusted Net Investor Claims (ANIC), no trade creditor claims procedure shall be established in this case, and general trade creditors who previously submitted claims to the Receiver shall recover nothing on those claims;

15. The CFF Receivership estate shall indemnify, defend and hold harmless the Receiver (individually and in his representative capacity), and his employees, agents, attorneys and accountants, and all persons involved in the review, verification, calculation, tabulation, or any other aspect of processing and distribution of checks and determination of claims filed pursuant to the Investor Claims Procedure, or involved in the review, verification, calculation, tabulation, or any other aspect of processing and reissuance of estate checks to any Affiants based on their reliance on the Small Estate Affidavits, or otherwise involved in the estate's administration (collectively, the "Indemnified Parties"), from and against all actions pending or threatened, whether at law or in equity, in any forum, from liabilities, damages, losses, costs and expenses, including but not limited to, reasonable attorneys' and other professionals' fees and costs, arising from conduct or omission of the Indemnified Parties in connection with this case;

16. The Second Distribution Motion, including all Exhibits, and this Second Distribution Order, shall be available to the public at the Clerk of the Court for the United States District Court, Eastern District of Michigan (Southern

8

Division) for inspection and copying at such Clerk's office during normal business hours by any interested party who wishes to examine the same; provided that the Court Clerk shall provide a copy of the Second Distribution Motion and this Second Distribution Order to any person requesting same at such person's cost, subject to such Court Clerk's normal practices, procedures and requirements concerning same;

17.     The Receiver is further directed to post a copy of the Second Distribution Motion, including all Exhibits, and this Second Distribution Order on the Receiver's website at www.cffreceiver.com;

18.     The Receiver is authorized to hold back the sum of USD $210,342.37 to apply to estimated Windup Costs;

19.     Following completion of the Second Distribution, and completion of all remaining matters necessary to wind up the Receivership, the Receiver is directed to file a final report, final accounting and final application for compensation and expenses.

SO ORDERED.


Dated:  June 21, 2018                    s/Mark A. Goldsmith
Detroit, Michigan                        MARK A. GOLDSMITH
                                         United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 21, 2018.

s/Karri Sandusky
Case Manager

10

*CFTC v. Watson, et al.*
Case No. 11-CV-10949

**EXHIBIT A-4**
**To**
**RECEIVER'S FINAL REPORT**

*Investor Second Distribution Letter*

# STENGER & STENGER

A MICHIGAN PROFESSIONAL CORPORATION

PHILLIP S. STENGER
ADMITTED IN MI, KY, MN, GA & CO
KAY GRIFFITH HAMMOND
ADMITTED IN MI
JOSEPH M. JAMMAL
ADMITTED IN MI & MN
AMANDA M. BREWSTER
ADMITTED IN MI
AARON S. MURRAY
ADMITTED IN IN
ANTHONY J. HUSPASKA
ADMITTED IN OH
KEITH A. SPARKS
ADMITTED IN MI & IN, NI, KY & CO
M. KYLE FLOYD
ADMITTED IN CA
PRESTON U. NATE
ADMITTED IN MI
ROBERT L. HENGGE
ADMITTED OH, KY & IN
TAYLOR J. LAND
ADMITTED TN

2618 EAST PARIS AVE SE
GRAND RAPIDS, MICHIGAN 49546

TELEPHONE (616) 264-3256
FACSIMILE (616) 940-1192
TOLL FREE (877) 512-2483

E-MAIL CFFRECEIVER@STENGERLAW.COM

WEBSITE WWW.CFFRECEIVER.COM

MICHELLE R. ZYLSTRA
ADMITTED IN MI
RACHEL E. WELCH
ADMITTED IN CA
PHILLIP A. LAMERE
ADMITTED IN IN
OF COUNSEL:
LEE T. SILVER
ADMITTED IN MI
DOUGLAS W. VAN ESSEN
ADMITTED IN MI
DENISE M. HALLETT
ADMITTED IN IN
CINQUE AXAM
ADMITTED IN GA
DANIELLE P. ROBERTS
ADMITTED IN GA
ERIC SITLER
ADMITTED IN TN
R. GARY MARSCHHAUSEN
ADMITTED IN CO

August 31, 2018

*VIA UNITED STATES FIRST CLASS MAIL*



Re:  *Commodity Futures Trading Commission v. Watson, et al.*
     Case No. 11-cv-10949 (E.D. Mich.)
     *TIME SENSITIVE MATTER*

Dear 
Claim Number:

    We are happy to report that on June 21, 2018, the Honorable Mark A. Goldsmith entered his *Order Ratifying Approved Investor Claimants List and Authorizing Second Distribution of Receivership Assets* (the "Order"), directing the Receiver to make a distribution of the Cash Flow Financial ("CFF") Receivership assets in the amount of Eight Hundred Thousand and 00/100 Dollars ($800,000). A copy of the Order is posted on the Receiver's website at www.cffreceiver.com under Pleadings.

    Accordingly, enclosed is your distribution check dated August 31, 2018.

    **IMPORTANT NOTICE: Checks must be cashed within 120 calendar days from the date of mailing such checks. Checks which are returned or have not been cashed within 120 calendar days from the date of mailing of such checks will become permanently null and void, your right to receive such payment and any future payments (if any) from the CFF Receivership will terminate and the amount otherwise distributable to you shall be disposed of according to the provisions set by the Court.**

    Also, please note, we cannot provide any tax, legal, estate planning or IRA advice. Please feel free to consult your own attorney or tax consultant should you have any questions related to such issues.

Should you have any other questions or concerns, please do not hesitate to contact my office.

Kind Regards,

Phillip S. Stenger
Receiver

Enclosure

# EXHIBIT A-5
## To
## <u>RECEIVER'S FINAL REPORT</u>

*Letter to Co-Investor Claimants*

# STENGER & STENGER
### A MICHIGAN PROFESSIONAL CORPORATION

PHILLIP S. STENGER
ADMITTED IN MI, KY, MN, GA & CO
KAY GRIFFITH HAMMOND
ADMITTED IN MI
JOSEPH M. JAMMAL
ADMITTED IN MI & MN
AMANDA M. BREWSTER
ADMITTED IN MI
AARON S. MURRAY
ADMITTED IN IN
ANTHONY J. HUSPASKA
ADMITTED IN OH
KEITH A. SPARKS
ADMITTED IN MI & IN, NL KY & CO
M. KYLE FLOYD
ADMITTED IN GA
PRESTON U. NATE
ADMITTED IN MI
ROBERT L. HENCGE
ADMITTED OH, KY & IN
TAYLOR J. LAND
ADMITTED TN

2618 EAST PARIS AVE SE
GRAND RAPIDS, MICHIGAN 49546

TELEPHONE (616) 264-3256
FACSIMILE (616) 940-1192
TOLL FREE (877) 512-2483

E-MAIL CFFRECEIVER@STENGERLAW.COM

WEBSITE WWW.CFFRECEIVER.COM

MICHELLE R. ZYLSTRA
ADMITTED IN MI
RACHEL E. WELCH
ADMITTED IN GA
PHILLIP A. LAMERE
ADMITTED IN IN
OF COUNSEL:
LEE T. SILVER
ADMITTED IN MI
DOUGLAS W. VAN ESSEN
ADMITTED IN MI
DENISE M. HALLETT
ADMITTED IN IN
CINQUE AXAM
ADMITTED IN GA
DANIELLE P. ROBERTS
ADMITTED IN GA
ERIC SITLER
ADMITTED IN TN
R. GARY MARSCHHAUSEN
ADMITTED IN CO

August 27, 2018

*VIA UNITED STATES FIRST CLASS MAIL*



Re:        *Commodity Futures Trading Commission v. Watson, et al.*
Case No. 11-cv-10949 (E.D. Mich)

Dear ▮▮▮▮▮▮▮▮▮▮▮▮:

We are happy to report that on June 21, 2018, the Honorable Mark A. Goldsmith entered his *Order Ratifying Approved Investor Claimants List and Authorizing Second Distribution of Receivership Assets* (the "Order") directing the Receiver to make a distribution of the Cash Flow Financial ("CFF") Receivership assets in the amount of Eight Hundred Thousand and 00/100 Dollars ($800,000.00). A copy of the Order is posted on the Receiver's website at www.cffreceiver.com under Pleadings.

Accordingly, checks are currently being prepared for distribution to all Approved Investor Claimants who have been identified as having a positive Adjusted Net Investor Claim ("ANIC") (and appropriately cashed the first distribution check) and should be mailed in the next few weeks. Our records indicate that you are an Approved Investor Claimant who has a joint claim with another Approved Investor Claimant. As such, your distribution check will be made payable to both you and ▮▮▮▮▮▮, and will be physically mailed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**IMPORTANT NOTICE:** Checks must be cashed within 120 calendar days from the date of mailing such checks. Checks which are returned or have not been cashed within 120 calendar days from the date of mailing such checks will become permanently null and void, your right to receive such payment and any future payments (if any) from the CFF Receivership will terminate and the amount otherwise distributable to you shall be disposed of according to the provisions set by the Court.

**Also, please note, we cannot provide any tax, legal, estate planning or IRA advice. Please feel free**

to consult your own attorney or tax consultant should you have any questions related to such issues.

Should you have any other questions or concerns, please do not hesitate to contact my office.

Very truly yours,

STENGER & STENGER, P.C.

*Phillip Stenger*

Phillip S. Stenger

**EXHIBIT A-6**
**To**
**RECEIVER'S FINAL REPORT**

*List of Approved Claimants with Uncashed Checks*

| | A | B |
|---|---|---|
| 1 | **File Number** | **2nd Distribution Amount** |
| 2 | CF000041 | $175.44 |
| 3 | CF000127 | $174.96 |
| 4 | CF000194 | $388.32 |
| 5 | CF000378 | $250.65 |
| 6 | CF000500 | $125.32 |
| 7 | CF000542 | $1,499.84 |
| 8 | CF000554 | $278.27 |
| 9 | CF000579 | $921.18 |
| 10 | CF000587 | $192.98 |
| 11 | CF000638 | $113.29 |
| 12 | CF000646 | $563.91 |
| 13 | CF000760 | $573.96 |
| 14 | CF000790 | $125.33 |
| 15 | CF000803 | $125.33 |
| 16 | CF000863 | $125.31 |
| 17 | CF000953 | $1,518.80 |
| 18 | CF001013 | $246.63 |
| 19 | CF001021 | $1,241.10 |
| 20 | CF001022 | $501.25 |
| 21 | CF001191 | $149.15 |
| 22 | CF001245 | $250.65 |
| 23 | CF001316 | $751.88 |
| 24 | CF001324 | $213.04 |
| 25 | CF001384 | $50.13 |
| 26 | CF001386 | $526.32 |
| 27 | CF001408 | $125.32 |

**EXHIBIT A-7**
**To**
**RECEIVER'S FINAL REPORT**

*Letter to IRS Filing 2015 QSF Return dated March 16, 2016*

Ex. A-16

## STENGER & STENGER
### A MICHIGAN PROFESSIONAL CORPORATION

PHILLIP S. STENGER
  ADMITTED IN MI, KY, MN, GA, CO & OH
KAY GRIFFITH HAMMOND
  ADMITTED IN MI
JOSEPH M. JAMMAL
  ADMITTED IN MI, MN, TN, WI & MD
AMANDA M. SNEATHEN
  ADMITTED IN MI, IN & NJ
AARON S. MURRAY
  ADMITTED IN IN
ANTHONY J. HUSPASKA
  ADMITTED IN OH
KEITH A. SPARKS
  ADMITTED IN MI, MA, IN & NJ
M. KYLE FLOYD
  ADMITTED IN GA

2618 EAST PARIS AVENUE, S.E.
GRAND RAPIDS, MICHIGAN 49546

TELEPHONE (616) 940-1190
FACSIMILE (616) 940-1192
TOLL FREE (888) 305-7775

OF COUNSEL:
LEE SILVER
  ADMITTED IN MI
DOUGLAS W. VANESSEN
  ADMITTED IN MI
DENISE M. HALLETT
  ADMITTED IN IN & IL
R. CARY MARSCHHAUSEN
  ADMITTED IN CO
LISA A. HASTER
  ADMITTED IN MN
CINQUE AXAM
  ADMITTED IN GA
DANIELLE P. ROBERTS
  ADMITTED IN GA

March 16, 2016

***VIA CERTIFIED MAIL***
Department of the Treasury
Internal Revenue Service Center
Cincinnati, OH 45999-0012

    Re:    CFTC v Cash Flow Financial et al Combined Settlement Fund
            EIN:   45-0601429
            2015 Calendar Year Form 1120-SF

Dear Internal Revenue Service,

Enclosed for filing on behalf of the CFTC v. Cash Flow Financial et al Combined Settlement Fund, please find 2015 Form 1120-SF U.S. Income Tax Return for Settlement Funds (Under Section 468B).

If you have any questions, please call our accountant, Jerry Jonckheere, at 616-774-8221. Thank you.

                Very truly yours,

                Phillip S. Stenger
                Receiver

Enclosure
C:    J. Jonckheere (Plante & Moran PLLC)

267175

**EXHIBIT A-8**
**To**
**RECEIVER'S FINAL REPORT**

*Letter to IRS Filing 2015 QSF Return dated March 7, 2017*

Ex. A-4

# STENGER & STENGER
### A MICHIGAN PROFESSIONAL CORPORATION

PHILLIP S. STENGER
Admitted in MI, KY, MN, GA, CO & OH
KAY GRIFFITH HAMMOND
Admitted in MI
JOSEPH M. JAMMAL
Admitted in MI, MN, TN, WI & MD
AMANDA M. SNEATHEN
Admitted in MI, IN, NJ & CO
AARON S. MURRAY
Admitted in IN
ANTHONY J. HUSPASKA
Admitted in OH
KEITH A. SPARKS
Admitted in MI, MA, IN, NJ & KY
M. KYLE FLOYD
Admitted in CA

2618 EAST PARIS AVENUE, S.E.
GRAND RAPIDS, MICHIGAN 49546

TELEPHONE (616) 940-1190
FACSIMILE (616) 940-1192
TOLL FREE (888) 305-7775

PRESTON U. NATE
Admitted in MI
ROBERT L. HENGGE
Admitted in OH, KY & IN
OF COUNSEL:
LEE SILVER
Admitted in MI
DOUGLAS W. VANESSEN
Admitted in MI
DENISE M. HALLETT
Admitted in IN & IL
R. GARY MARSCHHAUSEN
Admitted in CO
CINQUE AXAM
Admitted in GA
DANIELLE P. ROBERTS
Admitted in GA

March 7, 2017

***VIA CERTIFIED MAIL***
Department of the Treasury
Internal Revenue Service Center
Cincinnati, OH 45999-0012

Re:   CFTC v Cash Flow Financial et al Combined Settlement Fund
       EIN:   45-0601429
       2016 Calendar Year Form 1120-SF

Dear Internal Revenue Service,

Enclosed for filing on behalf of the CFTC v. Cash Flow Financial et al Combined Settlement Fund, please find 2016 Form 1120-SF U.S. Income Tax Return for Settlement Funds (Under Section 468B).

If you have any questions, please call our accountant, Jerry Jonckheere, at 616-774-8221. Thank you.

Very truly yours,

*Phillip Stenger*

Phillip S. Stenger
Receiver

Enclosure
C:   J. Jonckheere (Plante & Moran PLLC)

269202